(17 App. Div. 555.)

PEOPLE ex rel. MASTERSON v. MARTIN et al.

(Supreme Court, Appellate Division, First Department.   May 21, 1897.)

1. POLICEMEN—DISMISSAL—REVIEW.
    The action of the board of police commissioners in dismissing an officer
    for alleged misconduct will be reversed where the witnesses against the
    officer, after giving part of their testimony, did not appear to complete it,
    and could not afterwards be found, and the officer did not call any wit-
    nesses because the trial commissioner stated that he would recommend to
    the board that the testimony given be stricken out, and that he therefore
    did not desire to hear any further testimony, but such testimony was not
    stricken out, either because the commissioner did not recommend it or
    because the board overruled him, and the officer was not present at the
    hearing before the board.
2. SAME—RECORD—PROCEEDINGS BEFORE TRIAL COMMISSIONER.
    On certiorari to review the decision of the board of police commissioners
    dismissing relator from the police force, relator contended that, after the
    evidence against him had been given, the trial commissioner stated that he
    did not wish to hear any further evidence, because he intended to move, at
    the hearing before the board, to strike out the evidence which had been
    given, and that relator, relying thereon, did not examine his witnesses.
    The return of the proceedings before the board showed that such motion
    had been made by the trial commissioner, but neither the return nor the
    stenographer's minutes showed that the trial commissioner had stated that
    he would move to strike out the evidence against relator. *Held*, that a re-
    turn by the trial commissioner was properly required as to what occurred
    on the hearing before him.
    Rumsey and Ingraham, JJ., dissenting.

Certiorari by Eugene A. Masterson to review the proceedings of
James J. Martin and others, police commissioners of New York City,
dismissing the relator from the police force.   Reversed.

There were a number of charges against the relator any of which, if properly
established, would justify his dismissal from the force.   The hearing on the
charges was begun before one of the commissioners alone on June 20, 1894, and
another session was had on July 5th, when, the two principal witnesses, Guy
and Browne, called to support the charges, not having completed their testi-
mony, witnesses were directed to attend without further notice.   On the sub-
sequent session,—July 11th,—owing to the absence of one of these witnesses,
the other was ordered to notify the complaint clerk so that he could get the
absent one, and a day was then to be fixed for the hearing.   At last, on Sep-
tember 19th, a hearing was had, when the complaint clerk swore to futile
efforts made to get either of these witnesses to attend, and his inability to
serve them with a subpœna.   It appears that the witness Browne had asked
for an adjournment to get Guy; that Guy's testimony was not finished, and at
his request, when under cross-examination, the hearing was adjourned; and
that, notwithstanding promises of Browne, and many attendances by the rela-
tor, neither Browne nor Guy ever appeared to finish their examination.   A
motion was made that Guy's testimony be stricken from the record for his
failure to come back.   The commissioner stated that he would make such
recommendation to the board, and at a full meeting of the board thereafter
he did recommend that the evidence of Browne and Guy be stricken out, and
the charge dismissed.   It appears by the minutes of the trial that, after the
motion was made to strike out, the relator's counsel stated:   "There are, if
necessary, three or four witnesses who would substantiate the officer's testi-
mony; but I don't think it necessary to call them."   It was insisted that this
last statement followed an assurance given by the trial commissioner that he
intended to recommend the dismissal of the complaint, and that he did not
desire to hear any more testimony.   Neither in the stenographer's minutes of
the trial nor in the return first made did this statement by the commissioner

appear: and, with a view to showing to the court what actually occurred both upon the trial and before the full board,—about which there was also a dispute,—the relator sought to have the minutes of the trial and the record of the subsequent proceedings before the board, as they appeared by the return made to the writ, corrected. In doing so he encountered considerable difficulty, because the board at the time of the dismissal was composed of an entirely different set of commissioners from those in office at the time the return was made to the writ. There was, in such return, an evident mistake, namely, a statement that "at a meeting of your respondents at which all of your respondents were present, the relator was sentenced unanimously." This was not the fact, for the reason that the board was differently constituted. The return in other parts shows that those making it had no knowledge of what took place, but were wholly dependent on the records for their information. To get the facts as claimed by the relator before the court, affidavits were filed by both sides with the board then in office, and making the return, and these were made a part of the return, and the court was asked to consider them, "in order not to do possible injustice to the said relator." A further return was ordered by the special term on an application made; and, this not being sufficient to bring out all the facts as claimed by the relator, another order was made that the former commissioner, who tried the relator, be made a party defendant, and make a return herein. By the original return it appeared, according to the records of the board, that the trial commissioner recommended the granting of the motion of counsel to strike out and the dismissal of the charges; but in the judgment of dismissal itself it appeared that all the commissioners present, including the trial commissioner, voted "Aye." By the return of the trial commissioner, however, it appears that he voted "No" upon the question whether the said charges were true, and against the dismissal of the said relator, and in favor of the dismissal of the charges, and that the statement in the judgment of dismissal that he voted "Aye" is untrue. On the other hand, to support the entry in the judgment, we have certain affidavits filed by the prosecution, and the records of the police department. The first affidavit by the stenographer was directed to showing the correctness of his notes, and that the trial commissioner's recollection was in fault. The same stenographer, however, later made another affidavit, which is part of the second return, in which he says that, after reading the commissioner's affidavit, he is unable to deny what the commissioner swears to, and admits that frequently he did not take down the statements of commissioners on trials of policemen, and may not have done so in this case. The affidavits of the clerk and deputy clerk of the board are to the effect that the minutes of the board show that the relator was dismissed by the unanimous vote of all the commissioners, and a copy of the resolution is annexed to the clerk's affidavit. By the affidavit and the return of the trial commissioner it further appears that, on the motion being made to strike out, he considered it should be granted, and stated that he would recommend to the full board that it ought to be granted, and had done so afterwards at the full board; and that at the last hearing, being informed that additional witnesses were present for the relator, he stated that, inasmuch as he intended to recommend the dismissal of the complaint, he did not desire to hear any more testimony.

Argued before RUMSEY, WILLIAMS, O'BRIEN, INGRAHAM, and PARKER, JJ.

Louis J. Grant, for relator.

Theodore Connoly, for respondents.

O'BRIEN, J. Were there no questions presented but those relating to the merits, we could easily dispose of this appeal. We have frequently held that the good of the service requires that a wide discretion should be vested in the commissioners; and their judgment, unless there is an absence of evidence to sustain it, will not be disturbed. This is but a corollary of the rule that the board of police, being the statutory judges of offenses against discipline

and efficiency of the force, their finding on the facts, though the evidence is conflicting or contradictory, is conclusive. We have not, therefore, referred to the merits, nor do we think a discussion thereof proper, because the principal question is, was the relator dismissed after a fair trial? Justice requires upon a trial that the hearing shall be full and fair; and where it appears that through design or inadvertence this has not been accorded, or where, by the action of the judge, or in reliance upon his assurance, the accused has been induced to withhold testimony in his favor, and is thereby prejudiced, it is but right that a judgment against him, upon such facts appearing, should not stand. In reaching a conclusion here as to whether the relator was misled or prejudiced, we should carefully note the distinction between the dispute which has arisen as to the facts themselves appearing on the trial and those which relate to the subsequent proceedings before the board of police, when the trial commissioner made his report, and when the relator, not being present, was dismissed. There is an undoubted conflict between the record of what took place at the meeting of the police board and the recollection of the trial commissioner, which we think it unnecessary to decide; because, if it is shown that the trial commissioner assured the relator that he would move to strike out the testimony of the two principal witnesses against him, and recommend a dismissal of the charges, and that, therefore, he had no desire to hear any more witnesses; and that afterwards, when, with his associates, at the board meeting, he overlooked his promise, and forgot or neglected to fulfill it,—it was as prejudicial to the relator as though he had informed his associates fully of the facts, and had recommended and voted for a dismissal of the charges, and been voted down. For, if the trial commissioner, by assurances that it was unnecessary, had induced the relator to withhold evidence of witnesses then in court, who might have proved his innocence, then clearly he was not fairly tried; and upon a statement of such facts to the board they should, if they differed with the trial commissioner, have afforded the relator the opportunity to produce such witnesses before deciding that he was guilty. If, on the other hand, the trial commissioner did not fully apprise them of what he had done on the trial, or of the assurances given by him to the relator that it was unnecessary to call any more witnesses, and the board, without being so informed, proceeded to judgment, then we must reach the same result, because their determination to dismiss was reached in ignorance of the facts. Except as affecting the credibility of the trial commissioner, what occurred before the full board, or what appears by its records, is, to a great extent, immaterial. The question is, what took place upon the trial? not, what occurred at the subsequent meetings of the board? The relator was not present at such meetings, and was not in a position there to protect his rights; and if the trial commissioner neglected to present the facts fully, or, having fully presented them, if he was voted down, we think that justice in either case requires that the judgment of dismissal should not stand. This brings us, threfore, to what we regard as the crucial

question in the case, and that is as to whether the trial commissioner upon the trial gave such assurances that, relying thereon, the relator was induced to withhold witnesses who were in court, and whom, for that reason, he did not call to prove his innocence.

Upon this question, as to what occurred upon the trial, while the stenographer's minutes do not show that any assurances were given, it was because of that fact that the many proceedings were taken which have resulted in presenting the affidavits of the stenographer and the return of the trial commissioner. This course was deemed necessary because the commissioners in office at the time the first return was made were no more cognizant of what took place upon the trial than were the associates of the trial commissioner who made the final return; and the only doubt created or question raised as to what took place upon the trial is that presented by the presumption of the correctness of the stenographer's minutes, supplemented by the affidavits of the stenographer, as contrasted with the return and affidavit made by the trial commissioner. There was no other way of disposing of the question as to the fullness of the stenographer's minutes and their accuracy, than to require a return by the trial commissioner. Such return, supplemented as it is by corroborating affidavits, we think should be taken as true. The commissioner states under oath what the relator insists then occurred,—that at the last hearing, being informed that additional witnesses were present, he stated that, inasmuch as he intended to recommend the dismissal of the complaint, he did not desire to hear any more testimony. It will be noticed that while the stenographer in his first affidavit endeavored to uphold the accuracy of his notes, and was inclined to think that the commissioner's recollection was in fault, he receded from this position in his subsequent affidavit by saying that he was unable to deny the truth of the commissioner's statement, and admitted that frequently he did not take down statements made by commissioners on trials of policemen, because he did not regard them as part of the minutes of the trial, and that he may not have done so in this particular case. The commissioner is corroborated, moreover, by the record of the board of police, from which it appears that at a meeting of the full board he did recommend both striking out and that the charges be dismissed. It thus appears that the minutes of the trial, in consequence of Commissioner Sheehan's refusal to hear testimony, does not contain all the evidence of the relator; and also that the only commissioner who took the evidence and was acquainted with all the facts and circumstances recommended that all the material parts of the evidence be stricken out. We concede that, if all the evidence was in the record, the other commissioners would not be bound by the views of the trial commissioner as to the disposition to be made of the motion, nor bound to sustain his views that the charges should be dismissed. But where, as here, it appears that the relator was led to close his case without calling three or four witnesses then present in court, because the commissioner stated that he would recommend the board to strike out the testimony, and for that reason would not hear any more testimony, it would be

unjust for the commissioners, with or without knowledge of the fact of what took place at the trial, and in the absence of the relator. to refuse to grant the motion to strike out, and proceed to pass judgment of dismissal. The course for the commissioners to have taken would have been, with the knowledge of the facts before them, to send the case back, and afford the relator the opportunity to put in any further testimony he might have to offer. It may be that these hearings are not to be technically regarded as common-law trials; but on any trial, common-law or otherwise, if, as in this case, the accused is not accorded a full and fair trial, then the course taken resulting in his conviction is against all rules, and the very spirit of justice.

Our conclusion is that the action of the respondents should be annulled, with costs, and the relator restored to his office.

WILLIAMS and PARKER, JJ., concur.

RUMSEY, J. (dissenting). The relator was tried upon charges preferred against him in the year 1894. The trial began before Mr. John C. Sheehan, at that time one of the commissioners, on the 20th of June, 1894, and continued, with various adjournments, until some time in September of that year, when the evidence was finally closed on the 22d day of September. The case was then referred to the board, and was considered by them on the 25th day of January, at which time, as appears by the records of the board, the relator was dismissed; all the commissioners then present voting "Aye" as their names were called upon the motion to dismiss him, including Commissioner Sheehan, before whom the testimony was taken. Upon the evidence as it appears in the record and as it was presented to the board, there is no doubt of the correctness of the action of the board in dismissing the relator, and no very serious contest is made upon that point by the counsel for the relator in his brief or argument. The questions in the case arise upon a consideration of the record in the various shapes in which it has been presented from time to time. The dismissal of the relator took place on the 25th of January, 1895. The writ was allowed on the 26th of April in the same year. A return was made at some time after that, but just at what time does not appear. Subsequently, however, and on the 22d of May, 1896, an amended return was made, sending up to the court the record, and also certain affidavits which had been filed with the board in an effort made by the relator to have the record corrected. These affidavits were made part of the amended return. Subsequently a further amended return was made by the full board returning another affidavit, which, it seems, had been used before that time on the application of the relator to correct the record. Thereafter, and in the month of January, 1897, an application was made to the court that John C. Sheehan, who had formerly been commissioner, but who had gone out of office, should be made a party defendant pursuant to the provision of section 2136 of the Code of Civil Procedure, and required to make a return of the proceedings had before him at the

time when the relator was dismissed. An order was granted to that effect, and thereupon Mr. Sheehan, being added as a party to the proceedings, made his return, in which he gives his version of the proceedings had before him, so far as they are material; and he also undertakes to contradict the record of the board in a very important particular.

The first serious question presented upon the decision of this case is as to the weight to be given to the return made by Mr. Sheehan in pursuance of the order of the court. It is well settled that upon the hearing of cases of this kind the return cannot be contradicted, and that the decision must be made upon the facts stated therein, and in all respects those facts must be taken as true. People v. Wurster, 149 N. Y. 549, 44 N. E. 298. Therefore it would have been our duty undoubtedly to accept the return of the commissioners, which included the record upon which the action of the board was taken, as final and conclusive upon all facts before them, and upon which they acted in dismissing the relator, leaving for our consideration the question whether the facts presented to them were sufficient to warrant the conclusion which they reached. The difficulty here arises from the fact that it is not disputed that the facts stated in the return made by Mr. Sheehan do not appear in the record presented to the board, and upon which they acted; that there was no way in which those facts could have been made to appear to them unless they were stated to them by Mr. Sheehan; and there is no claim on the part of the relator that any of the facts which do not appear in the record were stated by Sheehan to the board at the time of the consideration of the relator's case on the 25th of January, 1895. The return of Mr. Sheehan is at variance with the record in two other respects. It appears by the record of the proceedings before the board that when the case of the relator was considered the motion made by Mr. Sheehan was to strike out the testimony of the witness Guy and of the complainant, Brown, and that the charge be dismissed. Mr. Sheehan, in his return, states that his motion was simply to strike out the testimony of the witness Guy, and to dismiss the charge. This variance is not particularly important, although it is quite clear from all the proceedings that the motion made by Mr. Sheehan was as stated in the record, and not as reported in his return. But the variance is referred to simply as showing the inaccuracy of his recollection. His return was made more than two years after the proceedings of the board were had, and long after he had ceased to be a member of it; and, if the record is to be contradicted by his recollection solely, it is quite important that such recollection should be accurate and distinct. In another respect also his return seriously differs from the record as it is returned by the board. It appears from the record of the board that all the commissioners voted "Aye" upon the motion to dismiss the relator, and that this fact was recorded in the minute book of the board kept by the secretary at the time of the meeting. The resolution is produced containing the express statement of the clerk, which he testifies was taken at the time the resolution was adopted, that upon the resolu-

tion to dismiss the relator all the commissioners voted "Aye"; Mr. Sheehan, one of the commissioners, being present. This is contradicted by Sheehan in his return. It is not very material of itself whether he voted "No" upon the resolution or not, because it was adopted without his vote, but it is a very important question whether the unaided recollection of a former officer of the board as to what occurred two years before his report of it is made, shall be permitted to be used to contradict and overthrow the formal record of the board as to a transaction had at a full meeting, and which was immediately taken down by the clerk of the board in the presence of all the commissioners. It is quite apparent that such a contradiction and overthrow of the record, if permitted to take place, would render entirely uncertain the most solemn proceedings of any board or body of men who were intrusted with official duties, and would leave the rights of parties dependent in the future upon the slight and unaided recollection of unofficial persons, and thus those rights would be made utterly uncertain. The question is one which has an importance far beyond the result of this particular case, because, if the records are to be overthrown in this case, as is sought to be done, there is no reason why the records of any board in the city of New York or at Albany, involving the gravest transactions and the largest interests, may not be set aside in the same way, and upon the same sort of proof, whenever any strong private interest shall interpose to make it desirable to attack them. We do not mean by this to deny at all the fact that Mr. Sheehan, in his return, is giving accurately his recollection of the transaction. But the recollection of any man, however honest, ought not and cannot be taken to overthrow the written record of his own action, made in his own presence at the time the transaction occurred, and when, if ever, the mistake should have been corrected. We are forced to the conclusion that in this case, as in all cases where a return made by a former officer is inconsistent with the return made by the existing board, which is based upon the record of the proceedings had at the time, the record should be taken to be true, and should not be overthrown by the subsequent return. Whatever may have been the facts stated in the subsequent return, it is undoubtedly true that the action of the commissioners of police was taken upon the facts reported to them, and which appear in the return of the full board. This is conceded on all hands. In addition to the facts stated by Mr. Sheehan, which contradict the record, other facts are stated which may be said in a way to supplement the record, because they are in addition to matters which appear by the stenographer's minutes. It was proper enough, for the purpose of getting all the facts before us, that this return should have been made upon these points; but the return is effective, not as containing facts which cannot be contradicted, but simply as evidence to be used in addition to other evidence in the case, to enable us to say upon this review whether these things, which are said to have been omitted from the testimony, actually took place. In deciding that question we are to consider the stenographer's minutes, the affidavits which were sub-

584 45 NEW YORK SUPPLEMENT (Sup. Ct.

mitted upon both sides in an attempt to correct the record, and the subsequent return made by the former commissioner, containing his recollection of his action before the board of commissioners at the time when this matter was presented to the board after he had referred it to them; and upon the whole to consider whether his present recollection is more likely to accurately represent the facts than the stenographer's minutes taken at the time.

It appears from the stenographer's minutes that on the 19th of September, 1894, a motion was made by the relator's counsel to strike the evidence of the witness Guy from the record, on the ground that he failed to come back for cross-examination; to which Commissioner Sheehan replied "that he would recommend to the board a motion to strike it out." It appears that Mr. Grant said "he would like to say that there are, if necessary, three or four witnesses who would substantiate the officer's testimony, but he did not think it necessary to call them." To this no reply was made by the commissioner, or by anybody else, and the case was adjourned until the 22d of September. On the 22d of September the defendant called one more witness, who gave unimportant testimony, and then the case was referred to the board. It is claimed by the relator that on the 22d day of September, immediately after the testimony of the one witness sworn for the relator was taken, it was stated that there were other witnesses there in behalf of the relator, ready to be sworn, but that Mr. Sheehan said that, inasmuch as the complainant and his witness had failed to appear, he intended to recommend that the complaint against the relator be dismissed, and for that reason he did not desire to hear any more testimony. Nothing of that sort appears in the stenographer's minutes. On the contrary, the thing which appears in the stenographer's minutes is that Mr. Grant, two days before the final hearing, had stated that he did not propose to call any more witnesses, because he did not think it was necessary; and it does not appear that the matter was referred to at the final hearing at all, or that at any time the commissioner gave him to understand that he need not call those witnesses. The affidavit of the stenographer is that he took down all that was done, although he subsequently qualified that by saying that he may possibly have failed to do so. The affidavits of several witnesses are produced to substantially the same effect, but there is one fact made to appear by undisputed testimony, which, as it seems to us, is utterly inconsistent with the idea that the failure to produce these witnesses was caused by any understanding with the commissioner that no further testimony was necessary. It appears that on the hearing before the full board, where Commissioner Sheehan was present, after he had moved to strike out the testimony of the witness Guy and of the complainant, and to dismiss the charges, which motion was lost, the board at once proceeded to consider the case upon the testimony. It must be that if, before that time, Mr. Sheehan had stated to this man that he need not call any further witnesses, and if he knew at that time that further witnesses were intended to be called by him, whom he had refrained from calling because of the assur-

ance of the commissioner that he would procure the charge to be dismissed, that fact would have been stated to the board, and a motion would have been made to send it back for a further hearing. Every consideration of good faith required that that step should have been taken by the commissioner, and we have no reason to doubt that he would have taken it had he understood at that time, when the thing was fresh in his mind, that he had practically certified that the evidence was not sufficient to warrant the dismissal of the relator. But nothing of the kind was done, nor is it claimed in the return of Mr. Sheehan that anything of the kind was done. It is conceded that the board were permitted to go on and consider this matter upon the testimony appearing before them, without any suggestion that the relator had been misled to refrain from swearing witnesses upon an assurance that the testimony against him would be stricken out. From this fact it is perfectly clear that no such agreement was in the mind of Commissioner Sheehan when these proceedings were had, and it is equally clear, in the absence of any explanation upon his part, that at that time he was not aware that any such assurance had been given by him. In fact it is almost impossible to suppose that an assurance of such great importance would have been given by him, and not have been put upon the stenographer's minutes; and when we consider that no such assurance appears there, and no action based upon it was taken by the commissioner who is said to have given it, at the time when the case was brought up for consideration, we are forced to conclude that his subsequent recollection is faulty in this regard, and that no assurance which the relator had a right to rely upon was given to him, which led him to refrain from producing testimony. We conclude upon the whole case that we are bound by the record as it appeared before the board when their action was taken; that, if that record can be overthrown at all, it can only be done by the clearest and most convincing evidence; that such evidence has not been produced here; that, therefore, the case must be decided upon the record as it was before the board; and that, upon that record, the conclusion of the board was proper, and should be affirmed.

INGRAHAM, J., concurs.