## COMMONWEALTH *vs.* ANGLES SNELL.

Bristol.    June 22, 1905. — September 7, 1905.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Pleading, Criminal.    Homicide.    Evidence.*

A general motion to quash an indictment containing three counts is to be denied if any one of the counts is good.

An indictment for murder, the caption of which gives the name of the Commonwealth, county and court in which the indictment was presented, and the time of the sitting of the court, as required by R. L. c. 218, § 17, contains under the provisions of § 20 of the same chapter sufficient allegations of the time and place of the commission of the crime.

An allegation in an indictment for murder, that the deceased after the alleged assault upon him by the defendant "then and there instantly died," is a sufficient allegation that the death occurred within a year and a day after the assault.

The portion of R. L. c. 218, § 67, prescribing a form which may be used for an indictment for murder, taken in connection with § 39 of the same chapter giving the defendant a right to a bill of particulars, is not in contravention of art. 12 of the Declaration of Rights of the Constitution of the Commonwealth, requiring that the crime shall be "fully and plainly, substantially and formally, described" to the accused.

In a criminal trial, evidence which is admissible on any ground to prove the crime charged will not be excluded because it tends to prove an intention to commit another crime.

In a trial for murder, it appeared, that the person murdered went out fishing in a small boat, and that one or two days later after an unusually heavy storm his body was found on a beach with a fracture in the skull, and with a rope around the neck with a strap attached to it, that the defendant after inviting the deceased to go fishing with him, which the deceased declined to do, was observed in his own boat near the deceased the last time he was seen alive, and that the defendant was accustomed to carry in his boat a rope with a strap and a weight attached to it like the rope and strap mentioned, that the defendant vehemently desired to obtain control of a house near the beach kept by one H. and to sell liquor there, and believed that he could accomplish this if the deceased was out of the way. An exception was taken by the defendant to the admission of the testimony of a friend of the defendant, that the defendant said to him that he wanted him to come down to the beach and board a week with H. and said to him : "You need money, so do I, and H. has from $1,600 to $2,000. And we will take him out in a boat fishing, and I will knock him on the head, tie a rope around his neck and a stone to the other end, and throw him overboard, and he will never come up, and I will be proprietor down there then, and you can come down and stay any time you like after that." The defendant contended that the deceased came to his death by accident or suicide. *Held,* that the evidence was admitted rightly as tending to show that the defendant had formed a purpose to obtain control of the house kept by H. and at one time had planned to kill H. and use the money which he knew H. had as a help to establish himself in the place, that in pursuance of this purpose, finding the deceased in his way, he determined to get rid of him, and that the common plan and motive under which he was acting was an unintelligent consuming desire to fortify himself in his position as an occupant of the house, at whatever cost, even the killing of one or both of these men, if need be. *Held, also,* that the testimony of H. that he had $1,600 and that the defendant knew it, was competent as tending with other facts to establish a probability of the existence of the purpose above described to strengthen the defendant's position in the house, in the execution of which the use of the money after the death of H. might be helpful. *Held, also,* that upon the question whether the death was by murder or suicide, the previous declaration of the defendant, to his friend as above described, of an intention to commit a murder and conceal it at the same place and in the same manner adopted in dealing with the deceased, was competent evidence.

In a trial for murder it is competent to show that on the day before the murder, when the defendant had it in contemplation, he tried by threats and suggestions of exposure to punishment to induce a woman who would be an important witness, if he committed the murder, to believe that it was for her interest to say nothing against him.

INDICTMENT for murder, found and returned in the Superior Court for the county of Bristol on November 6, 1903.

The case was tried before *Aiken* and *Schofield*, JJ. The indictment was as follows:

" The Jurors for the said Commonwealth, on their oath present, — That Angles Snell did assault and beat Tillinghast Kirby with intent to murder him and by such assault and beating did kill and murder Tillinghast Kirby.

" And the Jurors aforesaid, for the said Commonwealth, on their oath aforesaid further present, that said Angles Snell, in and upon one Tillinghast Kirby, did make an assault, and that the said Angles Snell, with a certain blunt instrument, the name and more particular description of which is to the Jurors aforesaid unknown, the said Tillinghast Kirby, in and upon the head of the said Tillinghast Kirby, then and there feloniously, wilfully and of his malice aforethought, did strike and bruise, giving to the said Tillinghast Kirby, then and there with the blunt instrument aforesaid, so unknown as aforesaid, in and upon the head of the said Tillinghast Kirby, one mortal wound ; of which said mortal wound he the said Tillinghast Kirby then and there instantly died.

" And so the Jurors aforesaid, upon their oath aforesaid, do say that the said Angles Snell, the said Tillinghast Kirby, then and there, in manner and form aforesaid, feloniously, wilfully and of his malice aforethought did kill and murder.

" And the Jurors aforesaid, for the said Commonwealth, on their oath aforesaid do further present, — That Angles Snell, in and upon one Tillinghast Kirby did make an assault ; and that the said Angles Snell, with a certain instrument, the name and a more particular description of which is to the Jurors aforesaid unknown, the said Tillinghast Kirby, in and upon the head of the said Tillinghast Kirby, then and there feloniously, wilfully and of his malice aforethought, did strike, wound, cut and bruise, giving to the said Tillinghast Kirby then and there with the instrument aforesaid, so unknown as aforesaid, in and upon the head of the said Tillinghast Kirby, one mortal wound, of which said mortal wound, he the said Tillinghast Kirby then and their instantly died.

" And so the Jurors aforesaid, upon their oath aforesaid, do

say, that the said Angles Snell, the said Tillinghast Kirby, then and there, in manner and form aforesaid, feloniously, wilfully and of his malice aforethought did kill and murder."

Before the jury was impanelled the defendant moved to quash the indictment on the following grounds:

"1. In that it fails to describe the crime attempted to be charged against him 'fully and plainly, substantially and formally.'

"2. In that it fails to state any time or place when and where the crime is alleged to have been committed.

"3. In that it fails to set forth that Tillinghast Kirby died within a year and a day from the alleged assault or stroke upon him.

"4. In that the first count fails to state where on the part of the body or head, and by what means or weapons, the alleged blow was administered; and the second and third counts fail to allege the part of the head where it is claimed such blow was inflicted.

"5. For that it does not appear from said indictment that the alleged crime was committed in this county, and that this Honorable Court, sitting for this county, has jurisdiction thereof.

"6. For that said indictment by failing to state due time and place, due means and methods employed in the alleged commission of said crime, and in failing to state that the deceased died within a year and a day, fails to comply with the constitutional requirements of due process of law under the constitution of this Commonwealth and under the constitution of the United States.

"7. For that all statutes or legislative enactments upon which this indictment is framed are unconstitutional and void as being in contravention of said constitution.

"8. For that said indictment is too uncertain and indefinite to properly apprise the defendant of the exact nature of the charge, or to furnish him with the proper means of defence; and also to guarantee his security from further prosecution or jeopardy in the event of acquittal."

The judges denied the motion; and the defendant appealed.

After the jury were impanelled they took a view of the beach at Horse Neck and the island of Gooseberry Neck, both in the town of Westport on the coast of the Atlantic Ocean.

A plan was used at the trial of which the following is a reduced copy:

During the trial certain evidence, which is described or referred to in the opinion, was admitted or excluded against the objection and exception of the defendant. The jury returned a verdict of guilty of murder in the first degree; and the defendant alleged exceptions.

*H. A. Dubuque*, (*J. P. Doran* with him,) for the defendant.

*H. Parker*, Attorney General, (*J. M. Swift*, District Attorney, & *F. T. Field* with him,) for the Commonwealth.

KNOWLTON, C. J.   The first question in this case arises upon the defendant's motion to quash the indictment. The indictment is in three counts, and the motion is general, applying to the indictment as a whole and not asking for a ruling in regard to any particular count. If, therefore, any count is good, the motion was rightly overruled. *Commonwealth* v. *Hawkins*, 3 Gray, 463. *Commonwealth* v. *Pratt*, 137 Mass. 98.

The defendant's first objection, which applies to all the counts alike, is that the indictment contains no statement of the time and place of the commission of the crime. The answer to this is found in the statute, which was intended to simplify the forms and rules of criminal pleading. R. L. c. 218, §§ 17 to 21. These sections, which were first enacted in the St. 1899, c. 409, are as follows:

" Section 17.   An indictment shall contain : —

" First, The caption, which shall consist of the name of the commonwealth, county and court in which the indictment is presented, and the time of the sitting of the court. One caption will be sufficient, although the indictment contains more than one count.

"Second, A plain and concise description of the act which constitutes the crime, or the appropriate legal term descriptive of such act, without a detailed description thereof. The words used in a statute to define a crime, or other words conveying the same meaning, may be used.

"Section 18. The circumstances of the act may be stated according to their legal effect, without a full description thereof."

"Section 20. The time and place of the commission of the crime need not be alleged unless it is an essential element of the crime. The allegation of time in the caption shall, unless otherwise stated, be considered as an allegation that the act was committed before the finding of the indictment, after it became a crime, and within the period of limitations. The name of the county and court in the caption shall, unless otherwise stated, be considered as an allegation that the act was committed within the territorial jurisdiction of the court. All allegations of the indictment shall, unless otherwise stated, be considered to refer to the same time and place.

"Section 21. The means by which a crime is committed need not be alleged in the indictment unless they are an essential element of the crime."

Additional provisions of a similar character in regard to particular subjects, are found in the sections immediately following.

In this indictment, the caption conforms to the statute, giving the name of the Commonwealth, county and court in which the indictment was presented, and the time of the sitting of the court. This, when read in connection with the statute, is an allegation that the act was committed before the finding of the indictment, and after it became a crime. In reference to the crime of murder, there is no period of limitations. R. L. c. 218, § 52. It is also an allegation that the act was committed within the territorial jurisdiction of the court. See *Commonwealth* v. *Rogers*, 181 Mass. 184, 191. These facts in regard to the time and place are all that need be proved at common law when the averments are made particularly; except so far as necessary to show jurisdiction, such averments never need be proved. *Commonwealth* v. *Tolliver*, 8 Gray, 386. *Commonwealth* v. *Lavery*, 101 Mass. 207. *Commonwealth* v. *Robertson*, 162 Mass. 90. *Ledbetter* v. *United States*, 170 U. S. 606, 613.

In all other particulars the second and third counts are good at common law. The allegation as to the means used and the location of the wound, are sufficient. *Commonwealth* v. *McAfee,* 108 Mass. 458. *Commonwealth* v. *Robertson,* 162 Mass. 90. *Commonwealth* v. *Coy,* 157 Mass. 200. *Commonwealth* v. *Webster,* 5 Cush. 295. *Westmoreland* v. *United States,* 155 U. S. 545. The statement that the deceased "then and there instantly died," is a sufficient allegation that the death occurred within a year and a day after the assault. *Commonwealth* v. *Robertson,* 162 Mass. 90. With the aid of the statutory provision in regard to time and place, these two counts are unquestionably good. *Commonwealth* v. *Rogers,* 181 Mass. 184, 191. They are also good as statutory counts, even though they do not follow the prescribed statutory form. R. L. c. 218, § 67.

The first count was intended to be strictly statutory. It follows exactly the form prescribed in R. L. c. 218, § 67, except that it does not contain the suggested statement of the manner in which the assault was committed. As the other two counts are good, it is unnecessary to determine whether this is sufficient. It contains no statement in terms that the death occurred within a year and a day after the fatal stroke. To this objection the Commonwealth answers that, under the statute, this is included in the meaning of the word "murder." It may also be contended that the R. L. c. 218, § 20, covers this in the provision that "All allegations of the indictment shall, unless otherwise stated, be considered to refer to the same time and place." In this particular the count is like one in *Commonwealth* v. *Storti,* 177 Mass. 339, in reference to which the court, finding it unnecessary to decide the constitutional question involved in a similar attack upon its validity, declined to give countenance to the suggestion that it was unconstitutional.

In reference to the defendant's contention that in other particulars the crime is not "fully and plainly, substantially and formally, described to him," as required by the twelfth article of the Declaration of Rights in the Constitution of Massachusetts, we may quote from *Commonwealth* v. *Robertson,* 162 Mass. 90, 96, the statement that these provisions for the protection of an accused person "only require such particularity of allegation as may be of service to him in enabling him to understand the

charge and to prepare his defence." We also notice, as an important part of the present statute, the provision for a bill of particulars in all cases where the indictment alone is not sufficiently full to give the defendant his constitutional rights. R. L. c. 218, § 39. In such cases, under the language of the statute, the defendant is entitled to this as an absolute right. *Commonwealth* v. *Kelley*, 184 Mass. 320, 323, 324. With the aid of this, when needed, an accused person can always answer to a charge with a full understanding of everything involved in it. See also *Commonwealth* v. *Dill*, 160 Mass. 536, and cases cited. Without attempting to pass upon the validity of this count in every particular, we do not hesitate to say that the general objections to the constitutionality of the statute are not well founded. See also *Cathcart* v. *Commonwealth*, 37 Penn. St. 108; *Goersen* v. *Commonwealth*, 99 Penn. St. 388; *State* v. *Sloan*, 65 Wis. 647; *Jordan* v. *People*, 19 Col. 417; *Caldwell* v. *State*, 28 Tex. App. 566; *Commonwealth* v. *Coleman*, 184 Mass. 198, 203. The motion to quash was overruled rightly.

The exceptions are to the admission and exclusion of evidence. Tillinghast Kirby, a man about eighty-seven years of age, who was then boarding near the shore of the sea in Westport, went out fishing in a small boat on the afternoon of September 9, 1903, and his dead body was found on Horse Neck Beach on September 18, one or two days after an unusually heavy storm. There was a fracture of his skull, as if caused by a blow from a heavy instrument, which, according to the testimony of medical experts, must have caused his death, and there was a rope around his neck. There was testimony that, as Kirby was about to go fishing, the defendant said to him: "Go with me, I am going out," and that Kirby replied: "You go in your boat, and I will go in mine." It appeared that the defendant and Kirby started at about the same time, each in his own boat, and there was testimony that the defendant was accustomed to carry in his boat a rope with a strap and weight attached to it, like the strap which was attached to the rope found around Kirby's neck when the body was discovered, and that the defendant was observed in his boat near Kirby, the last time that Kirby was seen alive. One Pierce testified that he lived in Fall River, that he was brought up with the defendant and went to school with him

when a boy, and that their relations had been intimate ever since. Subject to the defendant's exception he was permitted to testify that he had a conversation with the defendant at the corner of Pleasant and Ninth Streets in Fall River, about the first of May, 1903, in which the defendant said, " I am going to take you as a friend, you have always been one. I want you to come down to Horse Neck and board a week with Burden Head. You need money, so do I, and Burden Head has from sixteen hundred to two thousand dollars. And we will take him out in a boat fishing, and I will knock him on the head, tie a rope around his neck and a stone to the other end, and throw him overboard, and he will never come up, and I will be proprietor down there then, and you can come down and stay any time you like after that." In regard to this testimony the jury were instructed as follows: " The jury are not permitted to use the evidence of that conversation as the basis for an argument that, because the defendant was wicked enough to plan the murder of Burden Head, therefore he is probably guilty of the murder of Tillinghast Kirby. That conversation was introduced for the consideration of the jury for the purpose of showing a plan or purpose formed by the defendant to obtain the control or management of the house kept by Burden Head at Horse Neck Beach, and, in connection with the other evidence in the case, a purpose, influenced by the same motive on the part of the defendant, to remove or destroy any other person who stood in his path in carrying out that plan.

" Furthermore, it is a question in controversy in this case whether Tillinghast Kirby came to his death by accident or suicide or by murder. The jury are permitted to consider the testimony of the witness Pierce as bearing upon the probability whether he was murdered by the defendant, in connection with all the testimony in the case, tending to show that means were used to destroy his life and dispose of his body similar to the means and method suggested by the defendant to be used to murder and dispose of the body of Burden Head." The jury were cautioned against finding in the instruction an implication that an inference should be drawn upon the question, and were told that they could not consider the testimony except for one or the other, or both of the purposes above stated. No excep-

tion was taken to the instructions, and the only question argued before us in this part of the case is whether the testimony was competent for any purpose.

As a statement of the rule applicable to this question, we may quote this language of the court in *Commonwealth* v. *Robinson,* 146 Mass. 571, 577: " While it is well settled in this Commonwealth, that, on the trial of an indictment, the government cannot be allowed to prove other independent crimes for the purpose of showing that the defendant is wicked enough to commit the crime on trial, this rule does not extend so far as to exclude evidence of acts or crimes which are shown to have been committed as part of the same common purpose, or in pursuance of it. . . . In such cases there is a distinct and significant probative effect, resulting from the continuance of the same plan or scheme, and from the doing of other acts in pursuance thereof. . . . It is sometimes said that such evidence may be introduced where the several crimes form part of one entire transaction; but it is perhaps better to say, where they have some connection with each other, as a part of the same plan, or induced by the same motive."    The rules and principles applicable in such cases have often been discussed.    Always the real question is, whether the matter relied on has such a connection with the crime charged as to be admissible on any ground.    If so, the fact that it constitutes another distinct crime does not render it inadmissible.    See *Jordan* v. *Osgood,* 109 Mass. 457; *Commonwealth* v. *Scott,* 123 Mass. 222; *Commonwealth* v. *Blood,* 141 Mass. 571; *People* v. *Molineux,* 168 N. Y. 264; *People* v. *Harris,* 136 N. Y. 423; *People* v. *Seaman,* 107 Mich. 348; *Goersen* v. *Commonwealth,* 99 Penn. St. 388; *Zoldoske* v. *State,* 82 Wis. 580; *People* v. *Craig,* 111 Cal. 460; *People* v. *Walters,* 98 Cal. 138; *Painter* v. *People,* 147 Ill. 444; *State* v. *Dooley,* 89 Iowa, 584.

Did this conversation, in connection with other evidence in the case, tend to show a general purpose on the part of the defendant, which operated, or would be likely to operate, in inducing the murder of Kirby? The conduct of the defendant and the circumstances attending his residence at the house of Head were peculiar.  In March, 1903, he induced one Sarah C. Sherman, who had lived with him in illicit relations as his housekeeper for fifteen years, to go to Head's house as Head's house-

keeper. He himself followed a few days later, and remained there until after the death of Kirby. He tried persistently to enter into business relations with Head, which should give him control, or at least independent standing, at the house. According to his own testimony, he made a contract with Head "to run the place on halves." This was denied by Head, who testified that he made no arrangement with him about their running the house together. The defendant was engaged in the business of selling intoxicating liquor at Head's house. On Labor Day, September 7, 1903, he had a fight with Head in which he was badly bruised, and which caused him to bleed profusely. Kirby had been accustomed to board with Head in this house in summer for many years, and sometimes at other seasons of the year. In 1903 he went there in March and stayed as a boarder until sometime in May, when he went away, but returned about the first of August. A witness testified that he said he might remain there through the following winter. There was testimony that the defendant had said of Kirby, "If that man was out of the way, I could do anything I wanted around here, as Burden's housekeeper has been my housekeeper for fifteen years." Another witness testified that he said, " he could handle Mr. Head if he (Kirby) was not there; that he could sell rum and do what he was a mind to ; that Head was not all there and was half crazy." Also, speaking of Kirby, that " the damned old bugger ought to be out of the way." A third witness testified that on August 16, 1903, the defendant said: " I cannot do any business while Kirby is there; if he was not there I could do some business." Without referring further to the testimony, we think the jury well might find that the defendant formed a purpose to obtain control at the house owned by Head, and to remain there with his housekeeper and sell liquor, and that, at one time, to carry out this purpose, he planned to kill Head and use money, which he knew Head had, as a help in establishing himself in the place, that in pursuance of the same purpose, finding Kirby in his way, he determined to get rid of him, and that the common plan and motive under which he was acting was an unintelligent, consuming desire to fortify himself in his position as an occupant of this house, at whatever cost, even the killing of one or both of these men, if need be. If the evidence, prop-

erly considered, would lead to this view of his conduct, the testimony of Pierce was competent as tending directly to establish his guilt. We are of opinion that the evidence was rightly admitted on this ground.

In this connection, Head's testimony, that he had $1,600 and that the defendant knew it, was competent, as showing a fact tending, with the other facts, to establish a probability of the existence of this purpose to strengthen his position there, in the execution of which the use of the money after Head's death might be helpful.

Evidence of other criminal acts is admissible to prove the commission of the crime charged when it tends to prove the absence of mistake or accident, if such a matter is involved in the issue, and when it tends to identify the person who committed the other crimes as the same person who committed the crime charged in the indictment. The principle applicable to evidence of other crimes is applicable to attempts to commit such crimes, and statements of an intention to commit them. See *Links* v. *State*, 13 Lea, (Tenn.) 701, 711; *Defrese* v. *State*, 3 Heisk. 53. In the present case the defendant introduced the testimony of medical experts that the fracture of the skull might have been caused by the force of the waves, after the death of Kirby, and that it was impossible to know that the death was not caused by drowning. The existence of the rope around the neck of the body was not inconsistent with an attempt of the deceased, in that way, to avoid the appearance of having committed suicide. Upon the question whether the death was by murder or suicide, we are of opinion that the previous declaration by the defendant of an intention to commit a murder and conceal it, at this very place, in a manner which, from the proposal to go fishing to the final disposition of the body, was identical with the method that seems to have been adopted in dealing with Kirby, was competent evidence for the consideration of the jury. The combination of elements which entered into the plan disclosed to the witness, Pierce, was unusual, beginning with the innocent victim as a sojourner in safety upon the land, and leaving his lifeless body buried in the ocean, and held there by a force which was expected to conceal it forever. When the evidence tended to show that the same person who told of this plan

invited Kirby to go fishing, and was seen near him in his own boat the last time that Kirby was seen alive, at a place where, if a body was thrown overboard, it would be likely to be washed ashore on the beach where this body was found, the fact that the defendant previously had formed such a plan for killing a man and concealing his body well might be considered by the jury, in determining whether Kirby took his own life. Whether, if there had been no such question in the case, it would have been competent, as tending to identify the defendant as the murderer, we need not decide. The exception to the admission of this evidence is overruled.

The letters written by the defendant to the witness Sherman were excluded rightly. There is nothing to show that they had any relation to any issue on trial.

This witness was allowed to testify, subject to the defendant's exception, that after Labor Day, which was September 7, the defendant said: " That if I should go to do anything that the officers would shut me up, give me three years or five for living with him, knowing that he was a married man." In another answer she said: " Why, he told me if I went to do anything he would kill me anyway." While the other answers indicate that the subject of which they were speaking was their misconduct in living together, there is much to indicate that the defendant might have had in mind the possibility of her making statements that would be used against him in reference to the death of Kirby. These statements or threats were after Labor Day, which was only two days before Kirby was killed. The other evidence in the case tends to show that Kirby's death had been premeditated by the defendant for a considerable time. If he then expected to kill Kirby, it was very natural that he should endeavor to impress this woman with the peril of her position if she made disclosures of any kind against him. She was an important witness at the trial. It was competent to prove that only a day before the murder, he tried to show her that it was for her interest to say nothing against him. We are of opinion that this testimony was competent.

The testimony of Dr. Buck which was excepted to was simply a proper statement of his opinion as an expert, and then a reaffirmation of it in stronger terms. It was, in substance, that he

was so confident in his opinion, as to believe that, if an autopsy could have been had earlier, it would still more positively have confirmed his finding.   This was clearly competent.

The witness Grinnell, who, on September 9, 1903, saw a man at a distance in a boat, was asked this question: " As you saw him, what did he appear to be doing?"; and answered: " It appeared to me he was setting or pulling lobster pots."   This was simply a description of the man, in reference to his movements and occupation, as they were seen by the witness.   The evidence was competent in accordance with familiar principles.

Besse was qualified as an expert as to the effect of winds and currents upon objects floating in the water in the places inquired of, and the testimony objected to was competent.

We are of opinion that there was no error in the admission or exclusion of evidence.

> *Appeal from order denying motion to quash dismissed;
> exceptions overruled.*