PEOPLE *v.* SHARAC.

1. CRIMINAL LAW—HOMICIDE—INFORMATION—VARIANCE.

Where an information for manslaughter ·charged the commission of the offense on or about May 13, 1917, while the proofs showed that although the shooting occurred on above date· deceased died on November 20, 1917, said variance *held*, not fatal in view of 3 Comp. Laws 1915, §§ 15739, 15746, time not being of the essence of the offense.

2. SAME—AMENDMENT.

Where defendant's counsel, in moving for his discharge on account of said variance, did not claim surprise or that it could not be cured by an amendment, the Supreme Court will not, in view of the remedial provisions of section 15746, set aside the verdict and sentence because no amendment was made.

3. SAME—EVIDENCE—ADMISSIBILITY.

Testimony of physicians tending to show that deceased died from the effects of the wounds inflicted on him by the revolver fired by defendant, *held*, admissible.

4. SAME—ADMISSION OF GUILT TO EXAMINING MAGISTRATE ADMISSIBLE—NOT PRIVILEGED.

Admission of guilt made by defendant to the justice while before him for examination, where no inducement was held out to him to make the same, *held*, not privileged, although the justice did not advise him that any statement he might make could be used against him.

5. SAME—ARREST—DURESS.

The mere fact that defendant was under arrest when he made said admission of guilt did not constitute such duress as to exclude it.

6. SAME—TRIAL—INSTRUCTIONS—CHARGE AS WHOLE.

Where the charge as a whole protected the rights of defendant, there is no reversible error, although there may have been language in the charge open to criticism.

Error to Genesee; Black (Edward D.), J. Submitted January 15, 1920. (Docket No. 105.) Decided February 27, 1920.

On the general rule of charge of time and place in indictment for homicide, see note in 3 L. R. A. (N. S.) 1019.

Fred Sharac was convicted of manslaughter, and sentenced to imprisonment for not less than 7 nor more than 14 years in the State prison at Jackson. Affirmed.

*Clifford A. Bishop,* for appellant.

*Roy E. Brownell,* Prosecuting Attorney, and *Homer J. McBride,* Assistant Prosecuting Attorney, for the people.

SHARPE, J.   The respondent was convicted of manslaughter.   The information was in the statutory form for murder, and charged the offense as having been committed on one Bogo Sharac, at the city of Flint, on or about the 13th day of May, 1917.   The respondent and deceased were Scrvians, related to each other, and born and reared in the same town in that country. Respondent first came to this country.   He married while living at South Bend, Indiana, and after a time the deceased lived with him in his home there.   An intimacy sprang up between deceased and respondent's wife, and they left South Bend and came to Flint. Without knowledge as to their whereabouts, respondent also came to Flint, and there found them living together as husband and wife.   On May 13, 1917, all of the parties met at a baptismal ceremony at a neighbor's.   A friend sought to bring about a reconciliation and respondent claims that deceased then admitted his intimacy with respondent's wife and that he then lost all control over himself.   It is not disputed that he pulled a revolver he had been in the habit of carrying for some time and fired a number of shots into the body of deceased.   A charge of assault with intent to murder was preferred against him.   He was discharged on this, and after the death of deceased, on November 20, 1917, at the city of Flint, he was apprehended and brought to trial on the charge of murder,

which resulted as before stated. At the close of the people's case, respondent's counsel moved for the discharge of respondent on account of the variance between the charge in the information and the proofs, the former alleging the crime to have been committed on or about May 13, 1917, while the proofs showed the deceased died on November 20, 1917. This was denied. No application to amend was made by the prosecuting attorney. There are many assignments of error, that most strongly relied on being the refusal of the court to grant such motion. The claim of respondent's counsel as to this is thus stated:

"It is claimed by respondent that one of the vital elements of the offense of murder or manslaughter, is the death of the party assaulted, and that the completed offense cannot be charged prior to the date of the death, also that there is no doctrine of relation which could alter the date or time of death and no rule which could anticipate the death and complete the crime earlier."

He relies on the opinion of Chief Justice CAMPBELL in *Chapman* v. *People,* 39 Mich. 357, to support this contention. The information in that case charged that the respondent—

"on the twelfth day of November, one thousand eight hundred and seventy-six, at the township of Meridian, in said Ingham county, with force and arms did make a felonious assault in and upon the body of one John F. Morley, in the peace of the people of the State of Michigan then and there being, and then and there willfully and of his malice aforethought did kill and murder the said John F. Morley," etc.

The proofs showed that an assault was committed on the deceased at the township of Meridian on November 12th, that he was removed to his home in the city of Lansing, and died on November 27th. Justice CAMPBELL points out that while the statute dispenses

with the details of the crime required by the common
law,—

"when a description is found in an information which
uses common-law phrases and references, it must be
assumed as intended to have its common-law inter-
pretation."

He calls attention to the fact—

"that the offense is misdescribed in two respects:
*first,* in setting forth the assault and death as concur-
rent in time, and *second,* in averring them—which
would perhaps have necessarily followed—as concur-
rent in place,"

—and concludes that, as the crime is not completed
until death follows the assault, the averment of the
crime as having been committed in the town of Merid-
ian was not supported by proofs of death in the city
of Lansing.

The following sections of our criminal law must
be considered. Section 15739, 3 Comp. Laws 1915,
provides:

"That in all indictments for murder and manslaugh-
ter, it shall not be necessary to set forth the manner
in which, or the means by which the death of the
deceased was caused; but it shall be sufficient in any
indictment for murder to charge that the defendant
did willfully, and, of his malice aforethought, kill and
murder the deceased; and it shall be sufficient, in any
indictment for manslaughter, to charge that the de-
fendant did kill and slay the deceased."

Section 15746 provides:

"No indictment for any offense shall be held insuffi-
cient for want of the averment of any matter unneces-
sary to be proved, nor for the omission of the words
'as appear by the record,' nor because any person men-
tioned in the indictment is designated by a name of
office, or other descriptive appellation, instead of his
proper name, nor for omitting to state the time at
which the offense was committed, in any case where

time is not of the essence of the offense, nor for stating the time imperfectly, nor for stating the offense to have been committed on a day subsequent to the finding the indictment, or any impossible day, or on a day that never happened, nor for [want of] a proper venue, nor for a want of a proper and formal conclusion, nor for want of the statement of value or price of any matter or thing, or the amount of the damage, injury, or spoil, in any case where the value or price, or the amount of damage, injury, or spoil, is not of the essence of the offense."

In *People* v. *Hamilton,* 76 Mich. 212, the evidence disclosed the fact that the deceased died three days after the date alleged in the information, in which respondent was charged with murder. An amendment was asked for and granted. It was therein said:

"Time was not of the essence of the offense charged."

Such holding seems to be supported by the authorities. In 1 Michie on Homicide, p. 483, the rule is thus stated:

"It may be stated as a general rule that time is not an essential element of the crime of homicide, and the statement in the indictment for such offense as to when the crime was committed is not material further than to show that it was committed before the finding of the indictment and within the statute of limitations. The averment of the time of the commission of the offense not being material need not be proved as laid."

See, also, 21 Cyc. p. 870; 1 Wharton's Criminal Evidence, p. 299; 8 Words and Phrases, p. 7283; and *Commonwealth* v. *Snell,* 189 Mass. 12 (75 N. E. 75, 3 L. R. A. [N. S.] 1019).

There is no claim on the part of respondent of surprise, or that the variance could not have been cured by an amendment on the trial. In fact, the language used by his counsel in presenting the motion was an invitation to the prosecuting attorney to ask that the amendment be made. Under the remedial provisions

of section 15746, *supra,* we are constrained to decline to set aside the verdict and sentence for this reason.

Error is assigned on the action of the trial court in admitting, against respondent's objection, testimony of physicians tending to show that the deceased died from the effects of the wounds inflicted on him by the revolver fired by the respondent. There would seem to be no question from the testimony thus given that the deceased died as a result of such wounds. While some of the questions were subject to the objections made, a reading of the entire record fails to satisfy us that any error prejudicial to the respondent was committed in the respect claimed.

William L. Landon, the justice before whom respondent was brought on the charge first preferred against him, and who formerly practiced law, was permitted to testify as to statements then made to him by respondent. The claim is made that it was the duty of the justice to have explained to the respondent that he need not answer any questions and that any statements made by him might be used against him on his trial, and, as this was not done, that such testimony should not have been received. It is also claimed that the communication was privileged, within the rule laid down in *People* v. *Pratt,* 133 Mich. 125. In that case, the respondent said to the prosecuting attorney that he would like to talk to some attorney before he went before the grand jury and asked if he could see and talk to Judge Person, the circuit judge before whom the grand jury proceeding was pending. The prosecutor took him to the judge's office and introduced him. Judge Person testified that he told him he could not advise him as an attorney, that he was not obliged to testify to any matter that would incriminate him, but that if he would testify to "tell the truth, whatever it is." Pratt then burst into tears and told facts to the judge without which his convic-

tion could not have been had. The court held the statement inadmissible and discharged the respondent.

In the instant case, the justice testified:

"I asked him as to whether or not he wanted an examination in this court, and I explained to him at that time that if certain conditions existed that he would want an examination, and if certain conditions did not exist, that he would want to waive that examination and go into the circuit court. * * * He didn't seem to comprehend, didn't seem to understand what I was asking him when I was explaining things from the complaint, and I then told him that if he did the shooting, as stated in the complaint and warrant, that he would want to waive his examination and go into the circuit court; that if he didn't do it, that he would want an examination in my court."

That the respondent then said:

" 'He got my wife, I shoot him, hope he die, I kill the son of a bitch.' "

We do not think these facts bring the question presented within the ruling in the *Pratt Case.* No relation of attorney and client here existed, nor could the respondent have so understood. He did not go to the justice for legal advice, nor can we find from the record that he believed the justice was advising him as an attorney. While the record does not so state, it is apparent that at least the officer who had him in charge was also present. There was nothing said by the justice to induce the respondent to make the statement that he did, nor can we conclude that it was in any way privileged.

Was the statement made by him a voluntary one? In other words, was it the duty of the justice to first say to him that he need not answer any questions and that any statements made by him might be used against him on his trial? In *People* v. *Owen,* 154 Mich. 571, the rule is thus stated:

"Only when confessions are obtained by threats or promises, or under circumstances which legally constitute duress are they inadmissible."

See, also, *People* v. *Warner*, 104 Mich. 337.

The respondent was sworn as a witness in his own behalf. While he denied making the statement testified to by the justice, there is no claim on his part that any inducement was held out to him or any threat made which caused him to make a statement. The mere fact that he was then under arrest does not constitute such duress as to exclude the testimony. There is no such claim made by his counsel, his argument being based on the duty of the justice to advise him that he need not say anything tending to incriminate himself. Under the circumstances here presented, we do not think this assignment well founded. See 1 Wigmore on Evidence (Confessions), § 815 *et seq.*

The defense of temporary insanity was interposed by respondent. After testifying that deceased, on the occasion of the shooting, had in effect admitted his intimacy with respondent's wife, he was asked:

"Q. What happened then?
"A. I couldn't see anything then any more, everything was turning around me. I only heard somebody say to go out.
"Q. What was the next thing you remember?
"A. I only know when they caught me by the hand and asked me what I was doing.
"Q. Where were you at that time?
"A. I was out on the street.
"Q. Where was Bogo at that time?
"A. He was on the ground."

He further testified that he did not remember hearing any shots fired and that he had no "intention of shooting Bogo or hurting him in any way." As to this defense, the court charged the jury at considerable length. After stating fully the nature of the claim made by respondent's counsel, he said:

"It must appear in this case that the defendant is a man of sound mind. Now, by 'sound mind' is not meant a mind which is the equal of any mind possessed by any mortal in the world. We all know that there is a difference in the minds of our acquaintances. Some men are very bright, others are very dull; but they are held accountable. Perhaps it would be enough to say—and to leave it right here—that if, by reason of disease, the defendant was not capable of knowing he was doing wrong in the particular act, or if he had not the power to resist the impulse to do the act by reason of disease or insanity, that would be an unsound mind. But it must be an unsoundness which affected the act in question, and not one which did not affect it. There is a simple question for you."

He gave the following requests presented by respondent's counsel:

"I charge you if respondent was laboring under such a defect of mind and reason as not to know the nature and quality of the acts he was committing and incapable of forming a criminal intent, he should be acquitted, and that it is incumbent upon the people to prove beyond a reasonable doubt that he had the capacity to form intent to commit the crime, and also incumbent upon the people to prove that he was of sound mind at the time the act was committed.

"I charge you that if you find that the respondent at the time of the shooting was laboring under such a defect of mind and reason as not to know the nature and quality of the act he was doing and was incapable of forming a criminal intent, he cannot be convicted of the offense charged."

While there may be language in the charge somewhat open to the criticism of counsel, an examination of it as a whole satisfies us that the respondent's rights in this respect were fully protected.

The other assignments of error have been carefully considered. Several of them are, in effect, passed upon by what has been already said. We deem it sufficient to say as to the others that a reading of the

entire record satisfies us that they are without merit. We feel constrained to find that the respondent had a fair and impartial trial, that his rights were fully protected by the court and by his counsel, and that there was no miscarriage of justice in his conviction and sentence.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.