COMMONWEALTH *vs.* ROBERT C. WOOD.

Norfolk. October 6, 1981. — December 4, 1981.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Evidence,* Relevancy and materiality, Intent, State of mind. *Practice, Criminal,* Instructions to jury.

At a murder trial, there was no error in the admission of statements made by the defendant about three weeks before the murder, while showing a gun to two witnesses, that if they "ever wanted anybody wasted, he could do it and get away with it" and describing his method of disposing of a body, a method similar to that in which the body of the victim had been disposed of. [642-645]

The judge's instructions to the jury at a murder trial on consciousness of guilt referring to false statements made by the defendant did not improperly permit the jury to determine consciousness of guilt from pretrial false statements made by the defendant's former attorney. [645-646]

INDICTMENT found and returned in the Superior Court Department on May 14, 1979.

The case was tried before *Brogna,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Martin S. Cosgrove* for the defendant.

*Charles J. Hely,* Assistant District Attorney, for the Commonwealth.

WILKINS, J. On May 4, 1979, the body of Billy Lightner was found floating in Turner's Pond in Walpole. A cement block was attached to the body by a rope. There was evidence that the body had been in the pond for at least one month. Lightner had been shot twice. Both the Commonwealth's and the defendant's ballistics experts testified that a bullet recovered from the body had been fired from the

defendant's gun. The evidence tended to show that the victim had been shot after dark on March 27, 1979. That night a police officer had stopped a motor vehicle operated by the defendant. The defendant had with him a jacket, apparently with blood on it, that the defendant said belonged to Lightner. After the victim's body was discovered, a blood-spotted length of rope which had the same circumference and other physical properties as the rope tied to the cement block was found in the trunk of the defendant's car. The defendant testified that he saw someone else shoot Lightner on March 27.

The defendant appeals from a verdict of guilty of murder in the second degree. We transferred the case here on our own motion. He challenges (1) the admission of statements made by him approximately three weeks before the victim's death and (2) the judge's instructions concerning the evidence that the jury might properly consider on the issue of the defendant's consciousness of guilt. There was no error, nor is there any basis for disturbing the verdict pursuant to the standards of G. L. c. 278, § 33E.

1. The defendant challenges the admission in evidence of testimony from two witnesses of certain statements made by him on March 7, 1979, twenty days before the date on which the Commonwealth alleged the victim was killed. Prior to trial, the defendant filed a motion in limine, asserting that these statements were inadmissible hearsay and that the Commonwealth should be barred from introducing them. Before discussing the judge's ruling on the motion in limine, we shall set forth the challenged testimony of the witnesses, as it came before the jury.

Steven Lightner, the victim's brother, testified that on March 7 he was at the apartment of one Susan Foss with her and the defendant. The defendant had a gun, which later in the trial was identified as the murder weapon. Lightner testified, over objection, that the defendant showed Foss his pistol and said, "If you ever want anyone wasted, let me know." In testimony elicited in part by the defendant, Steven Lightner stated that on March 16 the defendant told

him that if Lightner's brother, the victim, bothered him any more, he was going to "waste him."

Foss testified, over objection, that on March 7, 1979, the defendant and Steven Lightner came to her residence. The defendant showed Foss his gun and said that if she "ever wanted anybody wasted, he could do it and get away with it." When she asked him how he thought he could get away with it, the defendant replied that "he would put somebody in cement and drop them in a lake or an ocean and the body wouldn't be found."

The motion in limine was directed to the total exclusion on hearsay grounds of testimony concerning the defendant's March 7 statements. The judge denied the motion, reasoning that the defendant's statements were relevant to the identification of the gun, that they showed a criminal intent and perhaps premeditation, and that they were "close enough in time and the pattern of disposing of the body." The judge did not simply treat the motion in limine as raising a hearsay objection, but rather he considered the objection as a general one.

The judge admitted the defendant's statements generally. The defendant made no request that the evidence be limited to a particular purpose or purposes, nor did the defendant request an instruction that the evidence was not admitted to prove one or more contested issues of fact. Thus, if the evidence was admissible for any purpose, there was no error in its admission. See *Commonwealth* v. *Rawlins*, 352 Mass. 293, 295 (1967).

The defendant's statements were admissible if they were relevant to any issue in the case and not barred by an exclusionary rule. See *Poirier* v. *Plymouth*, 374 Mass. 206, 210 (1978). Because the statements were those of the defendant, and thus were admissions, a hearsay objection would have no validity. See *Commonwealth* v. *Comins*, 371 Mass. 222, 234 (1976), cert. denied, 430 U.S. 946 (1977). "Evidence is relevant if it renders the desired inference more probable than it would be without the evidence." *Commonwealth* v.

*Vitello*, 376 Mass. 426, 440 (1978), and authorities cited. See Proposed Mass. R. Evid. 401-403 (July, 1980).[1]

Without endorsing the admissibility of the challenged statements on each ground stated by the judge, we agree that the statements were sufficiently relevant on the question whether the defendant killed the victim to warrant their admission, in the judge's discretion. The manner in which the victim's body was disposed of was consistent with the method of disposition that the defendant announced twenty days before the victim's death he would use to dispose of any person he "wasted." It is true that the defendant made no specific threat on March 7 against the victim or anyone else. However, admission of his statement in evidence tends to make more probable the inference that the defendant was the person who placed the victim's body in the lake than if that statement were not admitted. If the defendant had announced an intention to dispose of a victim's body by a unique means and a victim's body had been disposed of by that special means, one would have little hesitancy in recognizing the relevancy of the defendant's general statement. Here, the more commonplace means of disposing of the body announced by the defendant and used by the murderer makes it less likely than in the example stated that a trier of fact would rely substantially on the similarity of method to find guilt. But both types of statements are relevant. Only the weight, and thus the prejudicial effect on the defendant, is less in the circumstances of this case.

Although the question has not come before this court previously, our conclusion is consistent with views we have expressed in other cases. In *Commonwealth* v. *Ferreira*, 381 Mass. 306, 310-311 (1980), we recognized as relevant a statement made by a person, other than the defendant, that he intended to kill some police officer. This general statement, made by someone who shortly thereafter

---

[1] Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

was present at the scene of the shooting of a police officer, was, on general principles, relevant to the issue whether the defendant or the other person killed the victim.[2] More closely related, factually, to the case before us is *Commonwealth v. Snell*, 189 Mass. 12 (1905), in which we upheld admission of testimony that the defendant had described the means by which he would kill and dispose of the body of a person other than the victim.[3] About four months later the victim's body was found in circumstances consistent with the means of disposition earlier described by the defendant. This court held that the evidence was admissible because it was relevant on the issue whether the victim took his own life. We left open the question whether, if the possibility of suicide had not been raised, the evidence would have been competent as tending to identify the defendant as the murderer. *Id.* at 24. This reservation, although appropriate on the facts, appears to have been unnecessary. If the evidence of the defendant's plan of operation was admissible as tending to disprove suicide, it was only because it tended to show that the defendant had killed the victim, thus reducing the likelihood of suicide. Viewed in this respect, the reasoning of the *Snell* opinion is most persuasive in favor of the result we reach.

2. The defendant challenges the judge's instructions concerning the defendant's consciousness of guilt. The charge properly dealt with the evidence of false statements made by the defendant. He claims that, according to the judge's charge, the jury were permitted to determine consciousness of guilt from pretrial false statements made by his former attorney whom he called as a witness.[4] He argues that he

---

[2] In the special circumstances of that case, we held that it was not reversible error to limit the admissibility of the statement to impeachment purposes.

[3] "And we will take him out in a boat fishing, and I will knock him on the head, tie a rope around his neck and a stone to the other end, and throw him overboard, and he will never come up." *Id.* at 20.

[4] The defendant injected the matter of his former attorney's false statements into the case by calling him as a witness. The attorney testified that

should not be charged with his former attorney's misrepresentations because there was no evidence that he had authorized his attorney's conduct. The judge's charge on consciousness of guilt made no reference to the false statements made by the defendant's former attorney. If the defendant had wanted an appropriate instruction concerning the statements of his former attorney, evidence he himself elicited, he should have requested one.

3. The evidence of the defendant's guilt was substantial. There is no basis for disturbing the verdict pursuant to our power and duty under G. L. c. 278, § 33E.

*Judgment affirmed.*

he had made false statements at a pretrial hearing, tending to show that the victim was alive after the date (March 27, 1979) on which the Commonwealth alleged the victim had been killed. There was evidence through other defense witnesses that the attorney had made statements indicating that the victim was alive after March 27, 1979.