[Criminal No. 355.  Filed June 12, 1915.]

[149 Pac. 380.]

## DAVID P. ROBERTS, Appellant, v. STATE, Respondent.

1. CRIMINAL LAW—APPEAL—HARMLESS ERROR—MISTAKE IN COPY OF INDICTMENT.—Penal Code of 1913, section 1002, provides that a certified copy of the pleadings and proceedings must be transmitted to the court to which the action is removed. Section 939 provides that the precise time at which an offense was committed need not be alleged, but that it may be alleged to have been committed at any time before the finding or filing the indictment, unless time is a material ingredient of the offense. Section 177 provides that to make a killing either murder or manslaughter the party must die within a year and a day after the stroke received, or the cause of death administered, and that the whole of the day on which the act was done shall be reckoned the first. An indictment alleged that a

homicide was committed on February 21, 1909, and the evidence showed that deceased received the fatal stroke on or about that date and died immediately. In the copy of the indictment transmitted on change of venue, the date was stated as February 21, 1908. Accused took no steps to have the copy corrected, and it did not appear whether the discrepancy was discovered before or during the trial. *Held,* that accused's rights were in no manner prejudiced by the discrepancy.

2. HOMICIDE—INDICTMENT—DATE OF FATAL STROKE AND DATE OF DEATH. While under Penal Code of 1913, section 177, to constitute murder or manslaughter, the party must die within a year and a day after receiving the fatal stroke, it is not necessary that he should die within a year and a day after the date of such fatal stroke, as alleged in the indictment.

   [As to the certainty required in indictment for murder, see note in 3 Am. St. Rep. 279.]

3. CRIMINAL LAW—INSTRUCTIONS—COMMENTS ON EVIDENCE.—An instruction that circumstantial evidence was competent, and that if it excluded every reasonable hypothesis other than that of guilt it was entitled to the same weight as direct testimony, was not an improper comment on the weight of evidence.

4. CRIMINAL LAW—INSTRUCTIONS—"REASONABLE DOUBT."—An instruction that "reasonable doubt" meant that if, after the jurors had reviewed all the evidence, their reason told them that the evidence did not satisfy their mind that accused was guilty, he was entitled to an acquittal, but that if, on the other hand, their mind was so satisfied as to his guilt, he should be convicted, was not erroneous, though it is better to follow the well-established definition of reasonable doubt.

APPEAL from a judgment of the Superior Court of the County of Gila. G. W. Shute, Judge. Affirmed.

Messrs. Baker & Baker, for Appellant.

Mr. Wiley E. Jones, Attorney General, and Mr. Leslie C. Hardy, Assistant Attorney General, for the State.

ROSS, C. J.—In 1909, the grand jury of Graham county returned an indictment charging appellant with the crime of murder committed on the twenty-first day of February, 1909, in that county, by killing one Con Sullivan. On a motion for a change of venue, the case was transferred to Gila county, where, upon a trial, the appellant was convicted and sen-

tenced to life imprisonment. The appellant appeals from the judgment of conviction. He assigns for consideration of this court three errors: (1) That he was not tried and convicted upon a full, true and correct copy of the indictment. (2) That the court erred in its instructions by (a) commenting on the weight of the evidence and (b) by giving an erroneous definition of reasonable doubt. (3) That the verdict and judgment are not sustained by any legal and competent evidence. We will consider the points raised in the order given.

Section 1002 of the Penal Code of 1913 provides that when a change of venue is ordered the clerk must transmit to the court to which the action is removed a certified copy of the order of removal, record, pleadings and proceedings in the action. The copy of the indictment sent to the Gila county superior court was not an exact copy of the indictment found and returned by the grand jury, in that the date of the commission of the crime was set out in the copy as ''February 21, 1908,'' instead of ''February 21, 1909,'' as alleged in the original indictment. The appellant took no step to have the copy corrected in the trial court. The record is silent as to whether the discrepancy in dates was discovered by anyone before or during the trial. It is first brought to attention in this court on appeal. The appellant was entitled to be tried upon a correct copy of the indictment and might have delayed his trial until one was furnished. However, the law does not require the indictment to allege the exact date, nor is it essential that the date be proved as alleged, except where time is an ingredient of the offense charged. Section 939, Penal Code 1913.

The appellant's contention that Sullivan having died more than a year and a day after the date of the fatal wound as alleged in the copy of the indictment entitles him to an acquittal, is not borne out by the law. His contention would be correct if in fact Sullivan did not die within a year and a day after the stroke was received. Section 177, Penal Code. But the evidence in the case conclusively shows that Sullivan died immediately after he received the stroke, which was on or about February 21, 1909. The offense ''may be alleged to have been committed at any time before the finding or filing'' of the indictment or information in all offenses in which

XVII Ariz.—11

time is not an essential ingredient. Section 939, *supra.* We cannot conceive how the rights of appellant were in any manner prejudiced by the discrepant date.

The evidence was entirely circumstantial, and the court gave a rather comprehensive, and what seems to us a correct instruction upon that kind of evidence, unless he committed error, as appellant contends he did, in this excerpt from such instruction:

"And you are instructed that circumstantial evidence is legal and competent in criminal cases, and, if it is of such a character as to exclude every reasonable hypothesis other than that of the guilt of the defendant, *it is entitled to the same weight as direct testimony.*"

The appellant complains of the italicized part of this instruction as being "an argument of the relative value of circumstantial evidence as compared with direct or positive evidence, and goes also to the weight of the evidence." The quoted sentence contains three propositions. It told the jury: (1) That circumstantial evidence was legal and competent; (2) that its character must exclude every reasonable hypothesis other than that of the guilt of the defendant; and (3) that being true, it is entitled to the same weight as direct testimony. In effect, the jury were told that, if the circumstantial evidence was as satisfying and convincing to them of defendant's guilt as direct testimony, it should be given the same consideration; that they should be as ready and willing to act upon their convictions in the one case as in the other. If the word "consideration" had been used instead of the word "weight," the meaning intended to be conveyed might have been more aptly expressed; but the difference in meaning, if any, is so slight, that the jury must have understood that if they were satisfied of defendant's guilt beyond any reasonable doubt, even though upon circumstantial evidence, they should not for that reason discriminate for or against that character of evidence, but should act with equal promptness as if the testimony was direct. The jury are the judges as to the comparative value and weight of circumstantial evidence, as of direct evidence; but they may not ignore the rule of law that requires that they convict a defendant when convinced beyond any reasonable doubt of his guilt, in one case,

any more than in the other, and that is. what the court in effect told them in the instructions complained of.

The instruction on reasonable doubt of which complaint is made is as follows:

"You are further instructed, gentlemen of the jury, that it is incumbent upon the state in this case to satisfy your mind beyond a reasonable doubt of the truth of every material allegation contained in the indictment which has been read to you. As to what is a reasonable doubt is a hard thing to clearly define, but by the aid of decisions touching upon what is a reasonable doubt we are able to come to what will be of aid to you in determining that for yourselves. That is, a defendant in a criminal action is presumed at the outset to be innocent of the crime with which he stands charged, until the contrary be proved; and, in case you have a reasonable doubt whether his guilt is satisfactorily shown from all the evidence, he is entitled to be acquitted. Therefore, in order that you may convict this defendant of the crime with which he is charged, the burden is upon the state to satisfy you beyond a reasonable doubt of the truth of every material allegation in the indictment, and reasonable doubt means but this: If, after you have reviewed all the evidence under the law as given you by the court, your reason tells you that the evidence does not satisfy your mind that the defendant is guilty, he is entitled to an acquittal. If, on the other hand, your mind is so satisfied as to his guilt, he should be convicted."

The learned counsel for appellant say of this instruction:

"It appears to be an artful effort to 'gild' refined gold and to 'paint' the lily; to compute that which is not number, and to measure that which is not space."

We gather from this language that counsel wish to say that the words "reasonable doubt" are not capable of definition, or rather that they define themselves, and that any effort to explain them is idle and ill-advised; that they are words of common use and as easily understood by jurors as by judges. Acquiescing in this view, we find many text-writers and court decisions. Wigmore on Evidence, sec. 2497; Chamberlayne on Modern Law Evidence, sec. 996b; Thompson on Trials, sec. 2469.

The last author says that:

"All definitions are little more than metaphysical para-phrases of an expression invented by the common-law judges for the very reason that it was capable of being understood and applied by men in the jury-box."

Wigmore says:

"The effort to perpetuate and develop these unserviceable definitions is a useless one, and serves to-day chiefly to aid the purposes of the tactician. It should be wholly abandoned."

Chamberlayne says:

"Usually such attempts at explanation tend rather to confuse and bewilder than to clarify."

Notwithstanding what is said by these text-writers, which finds support in the decisions, still the courts continue to grind out definitions of the expression. The best known definition of the words is the one given by Chief Justice SHAW in the *Webster Case,* 5 Cush. (Mass.) 295, 320, 52 Am. Dec. 711. In *People* v. *Paulsell,* 115 Cal. 6, 46 Pac. 734, the court quoted from another California case as follows:

"For instance, the definition—or, rather, description—of 'reasonable doubt' given by Chief Justice SHAW in the *Webster Case* has been adopted by this court, and by nearly all American courts, as a statement of that mental condition sufficiently accurate."

We feel that safety and uniformity will be best subserved in following the well-established and approved definition in the *Webster Case.*

We do not think what we have said condemns the instruction given in this case, as being a misstatement of the law. If it amounts to a criticism of the definition of "reasonable doubt" as given, it is directed more at the "experimental departure from the well-established language sanctioned by all the courts upon the subject of reasonable doubt," and nothing more.

In view of the appellant's last assignment of error, we have carefully examined and scrutinized the evidence, and have come to the conclusion that the finger of guilt unerringly points to the appellant as one of three persons who killed Con Sullivan. We think the jury had ample evidence upon which to base their verdict of guilt, and can hardly conceive

how a different verdict could have been rendered. It would serve no useful purpose to discuss the evidence, and we will not therefore extend this opinion by doing so.

The judgment is affirmed.

FRANKLIN and CUNNINGHAM, JJ., concur.