## Commonwealth *v.* Ladd, Appellant.

Argued April 19, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused December 30, 1960.

*Neil W. Burd,* for appellant.

*Richard M. Rosenbleeth,* Assistant District Attorney, with him *Domenick Vitullo,* Assistant District Attorney, *Paul M. Chalfin,* First Assistant District At-

torney, and *Victor H. Blanc,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE BOK, December 1, 1960:

Appellant defendant was indicted in two bills, one for murder and one for manslaughter. Both indictments allege that the victim of the assault was struck on September 21, 1958, and died of it on November 1, 1959. He moved to quash the indictments for the reason that it is the common law of Pennsylvania that no one is responsible for a killing where death ensues beyond a year and a day after the stroke. The court below overruled the motions and defendant appealed. Whether the year and a day rule is and still should be current among us is the single question.

This court has not decided it before.

The only Pennsylvania authority is *Commonwealth v. Evaul,* 5 Pa. D. & C. 105 (1924), when Judge GORDON assumed that the rule existed in Pennsylvania in cases of felonious homicide but refused to extend it to the misdemeanor of involuntary manslaughter, which was the case he had before him. However, he mentioned the existence of confusion over the nature of the rule and cited *Heydon's Case,* 4 Coke's Reports 41, where the time was held to run from the death and not from the stroke.

In the instant case the court below also felt that as late as 1736, when Sir Matthew Hale's "History of the Pleas of the Crown" was published, there was disagreement among common law scholars over the nature of the rule and the time from which it ran.

We are of course concerned with the date of May 14, 1776, when such of the common and statutory law of England as had theretofore been in force in the province of Pennsylvania became the law of the Commonwealth by the Act of January 28, 1777, 1 Sm. L. 429, §2; 46 PS §152.

At common law there were three ways of dealing with murder and manslaughter. One was by indictment at the suit of the King, and this became in England and the United States what we recognize as public prosecution. The second was by an appeal of death, which was a private and vindictive process by an interested party and which grew out of the old Germanic custom of "weregild", or compensation for the death. The third was by inquisition against deodands, which is of no present interest because it involved the forfeiture of personal chattels that had caused death.

Blackstone defines murder in Chapter 14, Book IV, of the Commentaries (1769), at page 195, and gives the year and a day rule, timed from the stroke in prosecutions for murder, at page 197. He then discusses prosecutions and appeals in Chapter 23, Book IV, pp. 299-312, and at page 311 shows that by the Statute of Gloucester, 6 Edw. 1, c. 9 (1278), "all appeals of death must be sued within a year and a day after the completion of the felony by the death of the party." Appeals of death, not prosecution for murder, were involved in the Statute of Gloucester and they were later abolished during the reign of George III.

To the same effect is Sir Matthew Hale, Vol. 1 "Historia Placitorum Coronae" (1736), p. 425 et seq. Other common law writers also give the year and a day rule for murder as beginning with the stroke: Hawkins, Vol. 1 "Pleas of the Crown", Curwood ed. 1824, p. 91; Halsbury, Vol. 9 "Laws of England", Hailsham ed. 1933, §734, p. 428; East. Vol. 1 "Pleas of the Crown", pp. 214, 343; 3 Chitty, Perkins ed. 1836, p. 722; 3 Stephen "History of Criminal Law of England", p. 7; 1 Russell on Crime, Turner 10th ed. 1950; Perkins on Criminal Law, Univ. Text Book Series, 1957, p. 605.

Only one writer throws doubt on the doctrine that the year and a day rule runs from the stroke in prosecutions for murder and from the death in appeals of

death. This is Sir Edward Coke, 3 "Institutes of Laws of England", Chapter VII. On page 47 he states the rule as follows: "Murder is when a man of sound memory, and of the age of discretion, unlawfully killeth within any county of the realm any reasonable creature in rerum natura under the king's peace, with malice forethought, either expressed by the party, or implied by law, so as the party wounded, or hurt, &c. die of the wound, or hurt, &c. within a year and a day after the same."

Then at page 53 this occurs: "But seeing the year and day in the case of murder and homicide, must be accounted apres le fait, after the deed, if a man be stricken or poisoned, etc. the first day of January, and he dieth of that stroke or poison the first day of May, whether shall the year and day be accounted after the stroke or poison given, or after the death? and it shall be accounted after the death, for then the man was murdered, and not after the stroke or poison given, &c. *both in the indictment at the suit of the king, and in the appeal at the suit of the party.* And so it hath been often adjudged . . ." (Emphasis added.)

This is the only instance in our research where the rule is said to run from the death both in public prosecutions for murder and in private appeals of death.

In the United States whatever confusion there may have been was put at rest by the Supreme Court in *Louisville E. & St. L. R. R. Co. v. Clarke,* 152 U. S. 230 (1894), 14 S. Ct. 579, where Mr. Justice HARLAN said: "Ought we to allow this obvious construction of the statute to be defeated by any rule recognized at common law as controlling upon an inquiry as to the cause of death in cases of murder, appeals of death, or inquisitions against deodands?

"In cases of murder the rule at common law undoubtedly was that no person should be adjudged, 'by

any act whatever, to kill another, who does not die by it within a year and a day thereafter, in computation whereof the whole day on which the hurt was done shall be reckoned first.' 1 Hawk, P.C. c. 13; 2 Hawk, P.C. c. 23, §88; 4 Bl. Comm. 197, 306."

Taking up appeals of death, the Court went on, quoting from Comyn, 2 Inst. 320, tit. "Appeals", D: "By the statute of Gloucester, 6 Edw. I, c. 9, an appeal shall not abate by want of fresh suit, if brought in a year and a day after the fact done; which statute is, by construction, restrained to an appeal for the death of a man. And, therefore, an appeal upon the death of a man may be within the year and day, though there be not any fresh suit; within a year and a day after the death, though the blow was given before."

From this we conclude that in prosecutions for murder the year and a day rule runs from the time the fatal blow was given or the cause of death administered, and that this rule, so interpreted, was part of the common law of England in and before 1776. However, whether the rule theretofore had become part of the law of the Commonwealth is unnecessary for us to decide because we are of opinion that it is not part of the definition of murder but only a rule of evidence or procedure.

The Supreme Court of the United States, in the *Clarke* case, said: "In prosecutions for murder the rule was one simply of criminal evidence."

Among the States only a few have classified the rule as being one of evidence, procedure, or pleading, on the one hand, or as being part of the definition of murder or as an essential element of it or as a matter of substance, on the other. In the following cases the court has explicitly held the rule to be one of evidence or procedure: *People v. Clark*, 106 Cal. App. 2d 271, 235 P. 2d 56 (Cal. 1951); *Head v. State*, 68 Ga. App. 759, 24 S.E. 2d 145 (1943); *Elliott v. Mills*, 335

P. 2d 1104 (Okla. 1959) ; *Nevada v. Huff,* 11 Nev. 17 (1876). In *Head v. State,* supra, (68 Ga. App. 759), the Court of Appeals of Georgia said: "However, the question before us is not one of offense, but one of procedure and evidence . . .

"The courts of all the States that have dealt with the question . . . have with one accord held that unless death results within a year and a day from the date of the infliction of the mortal wound it is not criminal homicide. . . . The reasoning followed by the courts in the majority of the jurisdictions will be found well expressed in State v. Dailey, 191 Ind. 678, 134 N.E. 481, 20 A.L.R. 1006, supra. . . . For decisions of other States following the majority view see Howard v. State, 24 Ala. App. 512, 137 So. 532; Roberts v. State, 17 Ariz. 159(2), 149 P. 380; Kee v. State, 28 Ark. 155; People v. Kelly, 6 Cal. 210; State v. Bantley, 44 Conn. 537, 26 Am. Rep. 486; People v. Corder, 306 Ill. 264, 137 N.E. 845; Epps v. State, 102 Ind. 539, 1 N.E. 491; Rose v. Commonwealth, 156 Ky. 817, 162 S.W. 107; State v. Conley, 39 Me. 78; Commonwealth v. Snell, 189 Mass. 12, 75 N.E. 75, 3 L.R.A., N.S., 1019; State v. Keerl, 29 Mont. 508, 75 P. 362, 101 Am. St. Rep. 579; Debney v. State, 45 Neb. 856, 64 N.W. 446, 34 L.R.A. 851; Bowen v. State, 1 Ore. 270; Hardin v. State, 4 Tex. App. 355; Clark v. Commonwealth, 90 Va. 360(4), 18 S.E. 440; State v. Phillips, 59 Wash. 252, 109 P. 1047; Ball v. United States, 140 U.S. 118, 11 S. Ct. 761, 35 L. Ed. 377."

To these can be added, to show the extent of the rule in the United States: *State v. Moore,* 196 La. 617, 199 So. 661 (1941) ; *Chapman v. People,* 39 Mich. 357 (1878) ; *State v. Borders,* 199 S.W. 180 (Mo. 1917) ; *State v. Orrell,* 12 N.C. (1 Dev. L.) 139, 17 A. D. 563 (1826) ; *Percer v. State,* 118 Tenn. 765, 103 S.W. 780 (1907) ; and *State v. Spadoni,* 243 P. 854, 137 Wash. 684 (1926).

Of these, the Louisiana, Michigan, and Washington cases speak of the rule as an essential averment or a substantive element, but no case within our research has built the rule into the definition of murder beyond the point indicated. A sample is the *Chapman* case from Michigan, where the court said: "The injury which causes death is never regarded as constituting the crime of murder or manslaughter. The death of the victim not only within a year and a day, but also within the same jurisdiction was the controlling element which distinguished the guilt of the assailant from a common assault. *The time and place of death were always considered as necessary to be averred, and were required to be averred as independent of the averments of assault.*" (Emphasis added)

In practically all of the cases cited above and by the Georgia court the question for decision had to do with the sufficiency of the indictment, with reference to averments of the time and place of death. The existence of the year and a day rule in each State was the important thing to determine. One reason why the nature of the rule was not more frequently analyzed may be suggested by Blackstone's reference, infra to Coke's statement about murder as a description rather than as a definition. In a description one may expect to find together but unsorted not only the elements of the crime but the jurisdictional requirements of time and venue and date of death. These latter requirements affect only the right to prosecute, not the structure of the crime.

New York held, in *People v. Brengard*, 265 N.Y. 100, 191 N.E. 850 (1934), that the rule did not exist there because of a legislative history which showed an intent to abrogate the common law and because the New York Statute had an explicit definition of murder.

The following states have statutory requirements: Arizona, Arkansas, California, Colorado, Delaware,

Idaho, Illinois, Montana, Nevada, North Dakota, and Utah.

In Pennsylvania we have no statutory definition but we have taken the Blackstonian definition as our own: *Commonwealth v. Redline,* 391 Pa. 486 (1958), 137 A. 2d 472, saying that it was substantially the one adopted in *Commonwealth v. Drum,* 58 Pa. 9 (1868), and uniformly applied thereafter. *Redline* reads, at page 493: "A felonious homicide (i.e., murder) occurs when a person of sound memory and discretion unlawfully and feloniously kills any human being in the peace of the sovereign with malice prepense or aforethought, express or implied: see IV Blackstone, Commentaries, p. 195; 1 Warren, Homicide, Sec. 63; 1 Wharton, Criminal Law, Sec. 419 (12th Ed.)" In Blackstone these words are preceded by the statement: "Murder is therefore now thus defined, or rather described, by Sir Edward Coke." There is no mention of the year and a day rule. Blackstone waits for two pages before mentioning it, and then says, at page 197: "In order also to make the killing murder, it is requisite that the party die within a year and a day after the stroke received, or cause of death administered." The rule cannot, therefore, be said to be part of the definition of murder, either in Blackstone or in Pennsylvania.

Nor do we see any reason in principle for reading Blackstone's addendum into the body of his definition. Stephen, Vol. 3 "History of the Criminal Law of England", page 7, called the year and a day rule "an arbitrary rule", and Perkins, Criminal Law (1957), page 605, called it "a purely mechanical test which has been handed down from ancient times." Halsbury, in his "Laws of England" (Hailsham Ed.), Vol. 9, §734, p. 428, said: "It is an irrebuttable presumption of law that the death is attributable to some other cause and the person who inflicted the injury is not punishable for murder or manslaughter."

A good reason for the rule appears in Warren on Homicide (1938), Vol. 1, §60, where the author says, quoting Coke: ". . . if the person alleged to have been murdered 'die after that time, it cannot be discerned, as the law presumes, whether he died of the stroke, or poison, etc., or a natural death, and in case of life, a rule of law ought to be certain.' "

The rule does not change the legal concept of the facts of the case but only prevents process being had upon them under certain conditions. It should not be considered part of the definition of the crime any more than should the rule of venue: it is no less murder that prosecution of it may be had in county A but not in county B. It is clear, from Coke's and Warren's statement above, that the reason for the rule lay in the primitive state of medical knowledge at the time, or it may have been, as Judge GORDON suggests in *Evaul*, that it was designed to mitigate the rigor of the old law that exacted a life for murder and manslaughter indiscriminately.

We can take judicial notice of the far advance since 1776 of scientific crime detection and of scientific medicine. We are not dealing with any of the basic and living rights of a defendant, like the right to confront his accuser, the right to be presumed innocent, or the right to due process of law. A rule becomes dry when its supporting reason evaporates: cessante ratione legis cessat lex. There is now no more reason for a rule of a year and a day than there is for one of a hundred days or a thousand and one nights. The rule, as the New York Court of Appeals said in *People v. Brengard*, supra (265 N.Y. 100), is an "arbitrary span of time which was fixed by the common law", and this was because of the limited medical knowledge of the times.

A modern rule should be based on causation in the light of current knowledge. Society is free to prosecute murders without a statutory limitation, and it is pos-

sible that evidence and witnesses may be lost during a long interval between crime and trial. It is therefore not a strange idea to put no restriction of time upon the death of the victim and to require only proof of causation of conventional quality at the trial.

If the common law cannot change it cannot live. In *Commonwealth v. Hess*, 148 Pa. 98 (1892), we said: "If the great mass of legal principles, which has descended to us under the name of the common law, were composed only of iron-clad rules, it would be wholly unsuited to the present age and generation, and the great changes which have taken place, not only in the volume of business, but in the mode of conducting it. We are constantly applying the accepted principles of the common law to new phases and modes of doing business. This is a necessity, alike dictated by common sense and the necessities of trade . . ."

And in *Jackman v. Rosenbaum Co.*, 263 Pa. 158 (1919), 106 A. 238; affirmed 43 S. Ct. 9, 260 U.S. 22, we said: "The fundamental principles of the common law, while liable to expansion, are in essence unchangeable, but their applicability to given conditions necessarily varies according to changes wrought by usage or statutory enactment; and, pursuing this thought, what today is a trespass, may, by development of law, not be so tomorrow. . . ."

In *Nesbit v. Riesenman*, 298 Pa. 475 (1930), 148 A. 695, we said: "It is urged that in holding that a business, lawful in itself, may become a nuisance per se, we changed the common law, and that the legislature has the sole power to do this. We are not able to follow appellant's argument. The function of determining whether a rule of the common law exists, and what it is, lies solely with the court, as does also the question whether given conditions offend that law."

Our conclusion is that we may change a common law rule of evidence without being guilty of judicial legisla-

tion, and abolish it when we are aware that modern conditions have moved beyond it and left it sterile.

In *People v. Legeri,* 239 App. Div. 47, 266 N.Y.S. 86 (1933), the Court said: "Great advances have been made in medicine and surgery, and the doubt that the blow was the cause of death, when the latter ensued a year and a day after the former, has, in large measure, been removed. Frequently, there is now light where once there was darkness."

The order is affirmed.

Mr. Justice COHEN dissents.

―――――

CONCURRING OPINION BY MR. JUSTICE BELL:

Defendant-appellant was indicted on two bills, one for murder and one for manslaughter. Both indictments allege that on or about September 21, 1958, in Philadelphia County, Roy Ladd, with force and arms, feloniously, wilfully and with malice aforethought, assaulted Dorothy Pierce and wilfully and with malice aforethought, killed and murdered her; and in another count charged that Roy Ladd feloniously, wilfully and with malice aforethought, gave Dorothy Pierce a mortal wound from which mortal wound she died on November 1, 1959. Defendant moved to quash the indictments because death occurred more than a year and a day after the stroke, and consequently he could not, under the common law definition of murder, be guilty of murder or manslaughter. The court below overruled the motion and defendant appealed.

We are all agreed that the crucial question is whether the year and a day rule is part of the *present* law of Pennsylvania. Mr. Justice BOK and Mr. Justice MUSMANNO have made an exhaustive review of common law murder.* I agree with Justice BOK'S conclusion,

――――

* We must compliment counsel for defendant on his exceptionally able brief.

but I reach that conclusion by a very different route. From my examination of the authorities I am convinced that the year and a day rule was, at common law, part and parcel—and an absolutely essential indispensable part and parcel—of the *substantive* law of murder: Statutes of Gloucester, 6 Edward I, Ch. 9 (1278); Sir Edward Coke, Lord Chief Justice of England, 3rd Institutes of Laws of England, Ch. VII, page 52 (Circa 1620); IV Blackstone's Commentaries, Ch. 14, page 197; Hawkins "Pleas of the Crown", Vol. 1, 8th Ed. (1824), Ch. 13, §9, page 93; Stephens' History of the Criminal Law of England, Vol. 3, pages 7, 8; Russell's Law of Crimes, 7th Ed., page 690; Halsbury's Laws of England, Vol. 9, 2nd Ed., §734, page 428; Chitty, The Criminal Law, Vol. 3, page 276; Wharton's American Criminal Law, Vol. 2, §1073; Warren on Homicide, Vol. 1, page 60; Perkins on Criminal Law, page 605; 40 C.J.S., Homicide, §12, page 856; 26 Am. Jur., §46, page 190; *Louisville E. & St. L. R.R. Co. v. Clarke,* 152 U.S. 230.

A few quotations will suffice:

Sir EDWARD COKE said: "Murder is when a man of sound memory, and of the age of discretion, unlawfully killed within any county of the realm any reasonable creature in rerum natura under the king's peace, with malice aforethought, either expressed by the party, or implied by law, so as the party wounded, or hurt, &c. die of the wound, or hurt, &c. within a year and a day after the same."

IV Blackstone's Commentaries, Ch. 14, page 197: "In order *also* to make the killing murder it is requisite that the party die within a year and a day after the stroke received or cause of death administered."

In Halsbury's Laws of England, Vol. 9, 2nd Ed., §734, page 428, the following appears: "If death does not ensue until after the expiration of a year and a day from the date when the injury was inflicted, it is an

irrebuttable presumption of law that the death is attributable to some other cause and the person who inflicted the injury is not punishable for either murder or manslaughter."

In Russell's Law of Crimes, 7th Ed., page 690, it is stated: "Time of Death. No person can be convicted of murder or manslaughter of another, who does not die within a year and a day after the stroke received, or cause of death administered in the computation of which the whole day upon which the hurt was done is to be reckoned the first."

In Wharton's American Criminal Law, Vol. 2, §1073, (6th Ed.) it is said: "An indictment upon which it does not appear that the death happened within a year and a day after the wound was given is fatally defective; because, when the death does not ensue within a year and a day after the wound is inflicted, the law presumes that it proceeded from some other cause."

The Act of January 28, 1777, 1 Smith's Laws 429, §2, 46 PS §152, provides: "Each and every one of the laws or acts of general assembly that were in force and binding on the inhabitants of the said province on the 14th of May last shall be in force and binding upon the inhabitants of this state . . . and the common law and such of the statute laws of England as have heretofore been in force in the said province. . . ."

We are then presented with the question: Was the common law rule of a year and a day part of the common law of the Province or of the Commonwealth of Pennsylvania in 1777 and if so, has it been changed or should it now be changed? My answer to the first part of this question is that there is no Statute or decision of the Supreme Court of Pennsylvania which was created on May 22, 1722 which expressly or by necessary implication holds that the year and a day rule is or ever was part of the law of Pennsylvania;

on the contrary numerous decisions of this Court by their definition of "murder" clearly negate the existence of any such rule.

It is hornbook law that the common law is not and was not as immutable as the law of the Medes and the Persians; it was a gradual development of law which slowly changed to meet changing conditions. Murder has often been defined by the Courts of this Commonwealth but we repeat has *never* been defined to include the rule of a year and a day, and consequently that rule is not an essential element or part of the substantive law of Pennsylvania.

It is inaccurate to say that murder in Pennsylvania today is common law murder as it was adopted originally in 1777. Our theory and our definition of murder were initially derived from, and even today, with certain exceptions hereinafter referred to, are largely based upon the common law.* In *Commonwealth v. Bolish*, 381 Pa. 500, 510, 113 A. 2d 464, the Court said: "The theory of the common law was that anyone who committed a common law felony** possessed legal malice; and where a killing naturally resulted therein or therefrom, even though the killing was unintentional or accidental, the legal malice was carried over from the original felony and the original felon was guilty of murder.

. . .

"To summarize: If there was an unlawful killing with (legal) malice, express or implied, that will con-

---

* Cf. *Commonwealth v. Drum*, 58 Pa. 9; *Commonwealth v. Bolish*, 381 Pa. 500, 510, 113 A. 2d 464; *Commonwealth v. Thomas*, 382 Pa. 639, 641, 117 A. 2d 204; *Commonwealth v. Guida*, 341 Pa. 305, 19 A. 2d 98.

** At common law there were 8 or 9 felonies, namely, murder, manslaughter, rape, sodomy, robbery, larceny, arson, burglary, and perhaps mayhem: Clark & Marshall, Crimes, §3 (4th ed. 1940) : 1 Wharton, Criminal Law §26 (12th ed. 1932).

stitute murder even though there was no intent to injure or kill the particular person who was killed and even though his death was unintentional or accidental: [citing 12 prior decisions of this Court, Blackstone and numerous text authorities]."

Murder in Pennsylvania is common law murder (a) as extended or modernized or changed by Statute, and (b) as interpreted and applied to modern conditions by the Supreme Court of Pennsylvania. For example, (1) the Legislature has declared (a) that death resulting from trainwrecking is deemed to be murder;[1] and (b) that death resulting accidentally, unintentionally or otherwise from the common law *misdemeanor* of kidnapping is murder;[2] and (c) that death resulting accidentally, unintentionally or otherwise, in the perpetration or attempt to perpetrate *statutory* arson,[3] *statutory* burglary,[4] and *statutory* rape[5] (each of which was a misdemeanor at common law and not a felony or murder) is murder; and (d) that petit treason is murder;[6] and (e) that a killing of a prisoner during an attempt to rescue or release him from lawful authorities is murder;[7] and (f) that a killing of any person by a mob of three or more persons acting in violation of law is murder.[8] (2) This Court (a) has also made important changes in felony

[1] *Commonwealth v. Johnson*, 368 Pa. 139, 81 A. 2d 569; §§701 and 919 of the Penal Code of 1939, P.L. 872, 18 PS §§4701, 4919.

[2] §701 of the Penal Code of 1939.

[3] *Commonwealth v. Bolish*, 381 Pa., supra; §§701 and 905 of the Penal Code of 1939.

[4] *Commonwealth v. Maloney*, 365 Pa. 1, 73 A. 2d 707; §§701 and 901 of the Penal Code of 1939.

[5] *Commonwealth v. Gossard*, 383 Pa. 239, 117 A. 2d 902; §§701 and 721 of the Penal Code of 1939.

[6] Section 702 of the Penal Code of 1939.

[7] Section 4, Act of July 8, 1947, P.L. 1477.

[8] Section 5 (a), Act of July 8, 1947, P.L. 1477.

murder;[9] and (b) has modernized the definition of murder.[10]

Murder in Pennsylvania was first authoritatively defined in the famous case of *Commonwealth v. Drum*,[11] 58 Pa. 9, 15 (1868): "At the common law murder is described to be, when a person of sound memory and discretion unlawfully kills any reasonable creature in being and under the peace of the Commonwealth, with malice aforethought, expressed or implied." This definition has been followed *in substance* ever since.

From *Commonwealth v. Drum* to the most recent decision of this Court, the year and a day rule has never been an essential element of or a substantive part of the law of murder in Pennsylvania. What was the origin, the reason and the basis for the rule? (a) Was it based on a lack of medical knowledge in medieval and later times, or (b) was it an alleviation of the rigors of the common law, or (c) was its origin the protection of persons accused of this heinous crime at a time when their witnesses may have died or disappeared, and hence a rule of (a) substance, or (b) evidence, or (c) limitation? In view of the limited medical knowledge of those times and the definition of murder given supra by leading text authorities, doesn't it seem likely—realistically, logically, and authoritatively—that the rule was substantive if the rule ran from the stroke (as nearly all the leading authorities said it did), and evidential, procedural or limitational if it ran from the death of the victim?\* Cf. also Sir

[9] See the majority, the concurring and the dissenting opinions in *Commonwealth v. Redline*, 391 Pa. 486, 137 A. 2d 472.

[10] See infra.

[11] *Commonwealth v. Drum* is still the basis for much of the homicide law of Pennsylvania today.

\* The crime of murder does not exist and cannot arise until a human being dies as a result of an unlawful killing by another human being with malice aforethought expressed or implied. It is

EDWARD COKE, Lord Chief Justice of England, 3 Institutes of Law of England, Ch. VII, page 52, circa 1620.

It is clear from the authorities herein cited that the rule is not and in the light of modern medical knowledge should not be a part of Pennsylvania's substantive law of murder. Furthermore, there can be no justifiable reason today for the year and a day rule as a rule of evidence or procedure or limitation irrespective of whether the time be computed from the fatal stroke or from the death of the victim.*

The reason for approving it as a rule of evidence does not clearly appear. With respect to indictment or prosecution, a murder may not be discovered, or the identity of the killer may not become known until more than a year after the crime, or the public authorities may not discover for years that an apparently natural death or a supposed suicide resulted from an unlawful killing. Why should a murderer receive the protection of this antiquated common law indictment or evidentiary rule, and Society be further shackled in its already heavily handicapped fight against killers? *The safety, the protection, and the welfare of Society are paramount,* and require that there be no rule of evidence or of limitations for murder or for the prosecution of the murderer. It is as simple as that.

Furthermore, if authority be needed to support such an obviously wise and just position, it can be found in §77 of the Act of March 31, 1860,** as amended by §1

indisputable that until the death of the victim there is not and cannot be a murder.

* The crime of murder does not exist and cannot arise until a human being dies as a result of an unlawful killing by another human being with malice aforethought expressed or implied. It is indisputable that until the death of the victim there is not and cannot be a murder.

** P. L. 427, 19 PS §211.

of The Penal Code of April 6, 1939, and in *Common-wealth v. Danz*, 211 Pa. 507, 60 A. 1070. *The Code provides in effect that there shall be no limitation in indictments for murder.*

In the *Danz* case, the husband of Mrs. Danz, the defendant, died on June 27, *1901,* of chronic arsenic poisoning.* It was believed he died a natural death. Nearly two years after his death, his body was removed from the grave and exhumed and *traces* of arsenic poison were found. Mrs. Danz was indicted for murder on June 12, *1903.* The evidence of the Commonwealth was aggressively disputed, controverted and denied—factually, medically and legally. If the year and a day rule applied in Pennsylvania—either as a rule of evidence or a rule of procedure or limitation, it would have been urged and applied in that case. Nevertheless, Mrs. Danz's conviction of murder in the first degree was sustained unanimously by this Court.

This opinion could stop here were it not for the majority's definition of murder. That definition—taken by the majority (although not quite verbatim) from the highly controversial case of *Commonwealth v. Redline,* 391 Pa. 486, 493, 137 A. 2d 472, (which was in substance the same as the murder-definition in *Commonwealth v. Drum,* 58 Pa., supra)—is: "a felonious homicide** (i.e., murder) occurs when a person of *sound*

---

* The Commonwealth's circumstantial evidence indicated defendant had been placing antimony in her husband's food and drink for several years before his death and this had contributed to or accelerated his death.

** The *Redline* majority opinion was here quoting from Blackstone, who was distinguishing a felonious homicide from (1) a justifiable homicide, and (2) an excusable homicide. See supra. Moreover in this connection the *Redline* opinion was discussing "felony-murder".

*memory and discretion** unlawfully and *feloniously* kills *any* human being in the peace of the sovereign with malice, *prepense* or aforethought."

In order to define murder, why employ (if it can be avoided) antiquated verbiage, or words or expressions which today have a different meaning, instead of using modern words and language which clearly express and explain to a jury "what is murder"? Let's analyze the majority's definition. In the first place there is no "sovereign" in Pennsylvania or in the United States of America today, so why mention it? In the next place, a jury does not know and how can a trial judge *clearly* explain to a jury the meaning of "felonious" in a killing by poison, stabbing, lying in wait, or any other wilful deliberate and premeditated killing? Furthermore, it is inaccurate to limit murder to a "felonious" killing, since it includes a killing resulting from an aggravated assault and battery which is a misdemeanor. Cf. §709 of the Penal Code of 1939, *Commonwealth v. Dorazio,* 365 Pa. 291, 74 A. 2d 125. In other words, isn't "felonious" as used in the majority's definition, misleading or confusing and inaccurate?

Next, the Commonwealth does not have to prove— as the majority's definition of murder implies it must— that the defendant was "a person of sound memory and discretion". No jury and few Judges would be able to agree upon what is meant by "a person of sound memory and discretion," if they are interpreted literally;—and how could a trial judge explain to a jury accurately and aptly the meaning of these words? If these words, contrary to their present ordinary and popular meaning, merely mean (as I believe they mean) *a person who is "sane",* then the majority's definition is erroneous because the Commonwealth (we repeat) does not have to prove that an accused

---

* Italics throughout, ours.

murderer was sane: *Commonwealth v. Carluccetti*, 369 Pa. 190, 85 A. 2d 391; *Commonwealth v. Iacobino*, 319 Pa. 65, 178 A. 823.

In *Commonwealth v. Carluccetti*, the Court speaking through (the present Chief) Justice JONES, said (page 199): "As sanity is the legally recognized normal condition of human beings, its existence in any given instance is presumed. Consequently, the burden of proving insanity as a defense to a criminal charge is upon the one asserting it. It is incumbent upon him to establish the alleged defective mental condition by a fair preponderance of the evidence. Commonwealth v. Iacobino, 319 Pa. 65, 68, 178 A. 823."

Still further, the majority's definition of murder would make a person who committed suicide guilty of murder, and a person who unsuccessfully *attempted* to commit suicide guilty of an aggravated assault and battery on himself, or an assault and battery with intent to kill himself—contrary to the existing law of Pennsylvania. See: *Commonwealth v. Wright*, 11 Pa. D.R. 144; Cf. Article I, §19 of the Constitution of Pennsylvania; cf. also *Commonwealth v. Woodhouse*, 401 Pa. 242, 164 A. 2d 98. Suicide or attempted suicide is not a crime against or a menace to Society; it is a frowned upon or deplorable act by a perpetrator against himself which deserves and should receive not (a jail sentence or) punishment by Society but the sympathy of Society.*

It is clear, therefore, that the modern and the most accurate definition of murder is not that which is stated in the majority opinion, but that which was set forth in *Commonwealth v. Buzard*, 365 Pa. 511, 515, 76 A. 2d 394, and in *Commonwealth v. Bolish*, 381 Pa., supra: "Murder is defined as an unlawful

---

* Many leading text authorities and some jurisdictions disagree with this view.

killing of another [human being] with malice afore-thought express or implied." The word "malice" is used legally. It is universally agreed that legal malice is not only an essential ingredient of murder, it is the hall-mark and distinguishing criterion of murder. Furthermore, its legal meaning which is so well established, can be easily and clearly explained to a jury. See: *Commonwealth v. Bolish,* 381 Pa. 500, 113 A. 2d 464 (and twelve decisions and six leading text authorities cited therein); *Commonwealth v. Thomas,* 382 Pa. 639, 117 A. 2d 204; *Commonwealth v. Dorazio,* 365 Pa., supra; *Commonwealth v. Malone,* 354 Pa. 180, 47 A. 2d 445; IV Blackstone Comm. §198, page 1596.

Why not stick to this clear and easily understandable definition of murder?

For each and all of the aforesaid reasons I concur in this Court's affirmation of the Order of the lower court which overruled a motion to quash the indictments because they showed on their face that death occurred more than a year and a day after the fatal blow.

————

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The decision of the Court in this case is unnecessary, incongruous, and disruptive of accepted criminal procedure. It shatters, without regard for precedent or legal rationalization, a rule that is as firmly entrenched in the criminal law of our Commonwealth as the presumption of innocence and the proof beyond a reasonable doubt required to establish guilt. From time immemorial it has been a primary concept in murder cases that the death, which is the subject of the murder indictment, must fall within a year and a day after the striking of the blow to which it is supposedly attached. The Majority of this Court destroys that

rule and, in doing so, does so, sans reason, sans justice, sans logic, and sans authority.   ‑‑‑

The defendant, Roy Ladd, is charged with having inflicted blows on Dorothy Pierce on September 18, 1958 who died on November 1, 1959, allegedly, as the result of these alleged blows. The Commonwealth indicted Ladd on a charge of murder. The defendant moved to quash the indictment on the ground that murder cannot be predicated on a battery which occurred more than a year and a day prior to the date of death. The trial court refused the motion, and the defendant appealed. This Court affirmed the action of the lower court.

The year-and-a-day rule in murder cases is an ancient one. As early as 1278 an English statute provided that there could be no abatement of a charge of murder if the party aggrieved "shall sue within the Year and the Day after the Deed done." (Statute of Gloucester, 6 Edward 1 (1278), Chapter IX).

The great English legal authority, Sir EDWARD COKE, said in Chapter VII of this 3rd Institute, page 47: "Murder is when a man of sound memory, and of the age of discretion, unlawfully killed within any county of the realm any reasonable creature in rerum natura under the king's peace, with malice forethought, either expressed by the party, or implied by law, *so as the party wounded, or hurt, &c. die of the wound, or hurt, &c. within a year and a day after the same.*"*

In Halsbury's Laws of England, Volume 9, 2nd Edition, §734, page 428, the following appears: "If death does not ensue until after the expiration of a year and a day from the date when the injury was inflicted, *it is an irrebuttable presumption of law that the death is attributable to some other cause* and the person who

---

* Italics throughout, mine.

inflicted the injury is not punishable for either murder or manslaughter."

In Russell's Law of Crimes, (English) 7th Edition, page 690, the author states: "Time of Death. *No person can be convicted of murder or manslaughter of another, who does not die within a year and a day after the stroke received,* or cause of death administered in the computation of which the whole day upon which the hurt was done is to be reckoned the first."

The Pennsylvania General Assembly, by its Act of January 28, 1777, proclaimed that "the common law and such of the statute laws of England, as have heretofore been in force in the said province, except as is hereafter excepted," would be "in force and binding" on the inhabitants of Pennsylvania. The year-and-a-day rule thus became part of the criminal law of Pennsylvania in the very infancy of our Commonwealth, because it was not excepted in the statute of 1777.

This rule is accepted generally throughout the United States. In Wharton's American Criminal Law, Vol. 2, §1073, we find: "Indictments upon which it does not appear that the death happened within a year and a day after the wound was given are fatally defective; because, when the death does not ensue within a year and a day after the wound is inflicted, *the law presumes that it proceeded from some other cause.*"

Warren on Homicide, Vol. 1, §60, carries the statement that: "As a general proposition, criminal homicide is the unlawful taking of the life of one human being by another *in such a manner that the death occurs within a year and a day from the time of the dealing of the mortal wound. But if the death does not occur until more than one year and a day has intervened, it is presumed that the wound or injury received was not the cause of the death,* and the person who inflicted it cannot be held criminally responsible for the homicide."

That universally accepted authority, Corpus Juris Secundum, says: "At common law, and in the absence of statutes otherwise providing, *if more than a year and a day intervene between the injury and the death of the victim, the injury is not legally deemed the cause of death, and the person who inflicted it is not criminally responsible for the homicide.*" (40 C.J.S. Homicide, §12, p. 856).

The Majority does not attempt to refute these authorities. It does not point to any legislative enactment which puts at naught the Common Law rule which, by enactment of the Pennsylvania Legislature in 1777, has in effect become statutory law in Pennsylvania. It simply dogmatically announces that what has been the law of Pennsylvania ever since there was a Pennsylvania, and what was the law going back into the mists and the fogs of the formation of our basic common law, shall now be law no longer. To be sure, before it announces this drastic decision, the Majority Opinion does take us on a tour, a rather uneven tour, of ancient and modern works and ends up at a station called: *"Therefore,"* which, as I view it, is not at all the natural and logical terminus of the journey which preceded it.

The Majority Opinion is a paradox. It cites authorities which it does not follow, it refers to cases which contradict its main thesis, and directs attention to a United States Supreme Court decision which, to the extent that it is relevant, completely shatters the Majority's position. It quotes from a paragraph in the case of *Louisville E. & St. L. R.R. Co. v. Clarke,* 152 U.S. 230, as follows: "In cases of murder the rule at common law undoubtedly was that no person should be adjudged, 'by any act whatever, to kill another, who does not die by it within a year and a day thereafter, in computation whereof the whole day on which the hurt was done shall be reckoned first.' 1 Hawk.

P.C. c. 13; 2 Hawk, P.C. c. 23, §88, 41 Bl. Comm. 197, 306." but it does not complete the paragraph. The rest of that paragraph contains this vital language: "The reason assigned for that rule was that if the person alleged to have been murdered 'die after that time, it cannot be discerned, as the law presumes, whether he died of the stroke or poison, etc., or a natural death; and in case of life, a rule of law ought to be certain.' 3 Inst. 53. *And such is the rule in this country in prosecutions for murder, except in jurisdictions where it may be otherwise prescribed by statute.* Wharton's Amer. Cr. L. §1073; State v. Sorrell, 1 Devereux Law (N.C.) 139."

Thus, we have the pronouncement of the highest court in the land that the year-and-a-day rule is recognized throughout the United States, except where changed by statute; and, of course, we know it has *not* been changed by statute in Pennsylvania.

I do not see how the Majority can possibly derive any support for its position from the *Louisville* case. To begin with, it was a civil case and not a criminal case. The plaintiff had brought a trespass action because of the death of one Augustine Clark, allegedly caused through the negligence of the defendant, Louisville & St. Louis Railroad Co. A statute of Indiana, in which State the accident occurred, provided: "When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he lived, against the latter for an injury for the same act or omission. *The action must be commenced within two years.*"

The decedent was injured on November 25, 1886, and died February 23, 1888. The railroad contended that since the death occurred more than a year and a day following the injury the action of the executor

was ill-founded. The Supreme Court of the United States said that the common law rule of a year-and-a-day was not applicable because, in the first place, that rule applied to prosecutions for murder, and this action had nothing to do with criminal prosecution. And then, in addition, the Indiana statute, "in express words, gives the personal representative two years within which to sue."

The Supreme Court emphasized its position in the following diamond-clear language: "The reasons upon which the rule of a year and a day were applied in the above-mentioned cases at common law do not apply with the same force in pure civil proceedings that involve no element of punishment. . . We repeat that, where death was caused by the wrongful act or omission of another, the right of the personal representative, suing for the benefit of the widow and children or next of kin, to recover damages on account of such death, is complete *under the statute,* and may be asserted by action brought at any time within two years from the death."

Thus, it must be obvious that the *Louisville* case cannot under any circumstances be used as a precedent for the facts in the case at bar and that, moreover, to the extent that it treats the year-and-a-day rule in murder cases, it specifically declares, as I have already stated, that the rule is accepted in all of the United States, except where it has been abrogated by statute, which we know, but I must repeat, has not been done in Pennsylvania.

And then the Majority Opinion quotes from the Supreme Court opinion a single sentence in isolation, namely: "In prosecutions for murder the rule was one simply of criminal evidence." But a reading of the entire United States Supreme Court opinion shows that the Court did not intend by that statement in any way to modify its unambiguous declaration taken from

Hawkins' Pleas of the Crown, Bk. 1, c. 13, that "In cases of murder the rule at common law undoubtedly was that no person should be adjudged 'by any act whatever to kill another *who does not die by it within a year and a day thereafter. . .'* "

I repeat that the Majority Opinion is a paradox. It quotes at length from the case of *Head v. State,* 68 Ga. App. 759, 24 S.E. 2d 145, where the Court of Appeals of Georgia said: "The courts of all the States that have dealt with the question . . . have with one accord held that unless death results within a year and a day from the date of the infliction of the mortal wound it is not criminal homicide."

The Georgia Court then says, as quoted by the Majority Opinion this case that: "The reasoning followed by the courts in the majority of the jurisdictions will be found well expressed in State v. Dailey, 191 Ind. 678, 134 N.E. 481, 20 A.L.R. 1006, supra," and then it goes on to cite decisions supporting the rule in the States of Alabama, Arizona, Arkansas, California, Connecticut, Illinois, Indiania, Kentucky, Maine, Massachusetts, Montana, Nebraska, Oregon, Texas, Virginia and Washington, not excluding a decision of the Supreme Court of the United States.

In this same case, Judge GARDNER, writing for the Court, quotes with approval, 13 R.C.L. 903, §208, namely: "If it does not appear that the death of the person charged to have killed happened within a year and a day after the wound was given, the indictment will be deemed fatally defective, since when death does not ensue within such time the law presumes that it proceeded from some other cause."

Judge GARDNER then calls attention to Clark's Criminal Procedure, ch. 7, p. 239, "to the same effect."

After citing the Georgia case of *Head v. State,* with its impressive list of decisions *supporting* the year-and-a-day rule, the Majority Opinion in the case at bar

adds the names of other States which accept the rule, namely, Louisiana, Michigan, North Carolina, Washington and Tennessee.

One would think that, after a formal acknowledgment of this long and distinguished array of States which have *accepted* as law the year-and-a-day rule (and the list is by no means complete), the Majority would either accept the rule here in Pennsylvania because of this overwhelming weight of authority, or, if opposed to it, would show why it is opposed. But the Majority does neither. It says, almost in non sequitur, that: "No case within our research has built the rule into the definition of murder beyond the point indicated."

What does this mean? The Majority says, quoting from a Michigan case (*Chapman v. People,* 39 Mich. 357 (1878)) : "The injury which causes death is never regarded as constituting the crime of murder or manslaughter. The death of the victim not only within a year and a day, but also within the same jurisdiction was the controlling element which distinguished the guilt of the assailant from a common assault. *The time and place of death were always* considered as necessary to be averred, and were required to be averred as independent of the averment of assault." (Emphasis in Majority Opinion.)

But this is simply stating that white is white and black is black. Of course, the "injury which causes death is never regarded as constituting the crime of murder or manslaughter." The injury must be followed by an actual death. The Majority emphasizes that "the time and place of death were always considered as necessary to be averred," but what is strange about that? Of course, time must be averred. Time is necessary in order to determine whether the death occurred within a year and a day after the assault, and

the place of death must be averred in order to show that the Court has jurisdiction.

The Majority attempts to explain why the cases did not more frequently analyze the year-and-a-day rule. The answer is a simple one. There was no necessity to analyze what stood out as clearly as the thumb on one's hand. In its attempted explanation the Majority says: "One reason why the nature of the rule was not more frequently analyzed may be suggested by Blackstone's reference, infra, to Coke's statement about murder as a descriptive rather than as a definition."

What does this mean? The Majority answers the unspoken question: "In a description one may expect to find together but unsorted not only the elements of the crime but the jurisdictional requirements of time and venue and date of death. These latter requirements affect only the right to prosecute, not the structure of the crime." This answer eludes me. What is the "structure of the crime"?

The Majority Opinion says that: "The following states have statutory requirements: Arizona, Arkansas, California, Colorado, Delaware, Idaho, Illinois, Montana, Nevada, North Dakota, and Utah," but it does not tell us what those statutory requirements are.

After this nebulous discussion, the Majority finally makes a positive statement, namely: "In Pennsylvania we have no statutory definition but we have taken the Blackstonian definition as our own."

It quotes the Blackstonian definition as follows: "A felonious homicide (i.e. murder) occurs when a person of sound memory and discretion unlawfully and feloniously kills any human being in the peace of the sovereign with malice prepense or aforethought."

The Majority then says that in the definition: "there is no mention of the year and a day rule." But why

should it be mentioned? A definition cannot contain all possible rules involved in proving murder. There is a rule that a man may not be convicted of murder unless the corpus delicti is proved. In other words, there must be proof that a human being was actually killed. But the definition for murder does not say: "A felonious homicide occurs when a person of sound memory and discretion unlawfully and feloniously kills any human being in the peace of the sovereign with malice prepense or aforethought, express or implied, *and there is proof of the existence of the corpse or a satisfactory explanation as to how it disappeared.*"

There are many terms in the Blackstonian definition which, if questioned, would need themselves to be defined. Should those definitions then be included in the definition of murder? For instance, what is a "person of sound memory and discretion"? There can be a debate on that subject. What is meant by the "peace of the sovereign"? There could be a heated controversy on that topic. What is "prepense"? A volume or two could be written on that query. To me it is untenable to say that because the year-and-a-day rule is not included in a short formal definition of murder, it must therefore not constitute part of the crime of murder.

Even the Majority, after citing the Blackstonian definition of murder and declaring that it makes no reference to the year-and-a-day rule, then concedes that Blackstone did say that: "In order also to make the killing murder, it is requisite that the party die within a year and a day after the stroke received, or cause of death administered."

But the Majority seems in doubt as to whether to accept this very definitive statement because, it says, Blackstone waited two pages before he made this statement. But what difference does that make? I hope

that anything I may say in this Opinion does not lose cogency because it is separated by a couple of pages from something else. I cannot possibly say everything I want to say on this subject on one page. Neither can the Majority.

The great difficulty in grasping the Majority's argument in this whole controversy is that it apparently cannot make up its mind whether or not to accept Blackstone as an authority on murder. Certainly nothing could be clearer than Blackstone's declaration that: "In order also to make the killing murder, *it is requisite that the party die within a year and a day after the stroke received,* or cause of death administered."

If Blackstone is an accepted authority on Common Law, and who should doubt it, and if Common Law is part of our law except where specifically changed and who can doubt that, why should we strain over what Blackstone says because it appears on one page instead of another? No subject can be treated in one epigrammatic utterance. The law of murder cannot be condensed into one sentence, or one page, or hundreds of pages. No single definition can possibly embrace the whole area of its all-inclusive significance. Webster's Dictionary defines *man* as "a member of the human race," but that definition certainly does not tell the whole story of man.

I have mentioned non sequitur in this Dissenting Opinion. I believe a perfect illustration of that term occurs in the Majority's treatment of Blackstone's statement that there can be no murder unless "the party die within a year and a day after the stroke received or cause of death administered." Immediately following that quotation the Majority says: "The rule cannot, therefore, be said to be part of the definition of murder, either in Blackstone or in Pennsylvania."

How does that follow? A "therefore" is supposed logically to succeed a certain premise, but even if the

Majority showed conclusively that the year-and-a-day rule is not part of the Blackstone definition, why is it an inevitable sequence that the rule is not part of the law of murder in Pennsylvania?

Still apparently undecided about Blackstone, after its "therefore" conclusion about Blackstone, the Majority returns to Blackstone and says: "Nor do we see any reason in principle for reading Blackstone's addendum into the body of his definition." And as proof of why the addendum should not go into the body of the definition, the Majority says: "Stephen, Vol. 3 History of the Criminal Law of England, page 7, called the year and a day rule 'an arbitrary rule', and Perkins, Criminal Law (1957), page 605, called it a 'purely mechanical test which has been handed down from ancient times.' Halsbury in his 'Laws of England' (Hailsham Ed.), Vol. 9, §734, p. 428, said: 'It is an irrebuttable presumption of law that the death is attributable to some other cause and the person who inflicted the injury is not punishable for murder or manslaughter.' "

Here, again, the Majority cannot be certain whether it wants to accept Blackstone or not. It first cites him as an authority and then cites others in supposed derogation of what Blackstone says. But I do not see that what Stephen, Perkins and Halsbury said demolishes the existence of, or the reason for, the year-and-day rule.

To call the rule an arbitrary one, as the Majority reminds us that Stephen so called it, does not reduce its integrity, efficacy, reasonableness or justness. Many of our rules in law are arbitrary and for a good purpose. Statutes of limitation are arbitrary, many of our presumptions of law are arbitrary, but they are founded on the experience of mankind, and, representing as they do, the wisdom of the ages, they make for regularity and responsibility in the law. All statutes

are arbitrary but no one denounces them for that reason.

However, with all that the Majority says in derogation of the year-and-day rule, and even though it sets out to demolish the rule, it still cannot help from time to time saying something in favor of the rule. Thus we find in the Majority Opinion this interesting and comforting declaration: "A good reason for the rule appears in Warren on Homicide (1938), Vol. 1, §60, where the author says, quoting Coke: '. . . if the person alleged to have been murdered' die after that time, it cannot be discerned, as the law presumes, whether he died of the stroke, or poison, etc., or a natural death, and in case of life, a rule of law ought to be certain."

But, after giving this excellent reason for the rule, the Majority still refuses to accept the rule.

But the Majority does not linger long on substantive exposition. After its statement just quoted, it immediately crosses the frontier of substantive presentation and enters once more into the realm of nebulous dissertation: "The rule does not change the legal concept of the facts of the case but only prevents process being had upon them under certain conditions."

What are those conditions? The Majority does not say.

The Majority goes on: "It is clear, from Coke's and Warren's statement above, that the reason for the rule lay in the primitive state of medical knowledge at the time . . ."

After this positive statement of what is "clear," the Majority then adds: *"or, it may have been,* as Judge Gordon suggests in *Evaul,* that it was designed to mitigate the rigor of the old law that exacted a life for murder and manslaughter indiscriminately."

With this alternative "or it may have been" it is apparent that it is not "clear" to the Majority whether

it should or should not accept Coke's and Warren's statement about the rule.

However, despite all vacillation and indecision in discussion, the Majority is determined on one thing. It is adamantly resolved to do what it has no right to do, namely, to change the law on a fundamental right of accused persons.

The Majority does not seem to recognize how fundamental the year-and-day rule is. It says, in attempted mitigation of its drastic action: "We are not dealing with any of the basic and living rights of a defendant, like the right to confront his accuser, the right to be presumed innocent, or the right to due process of law."

But what could be more basic than the right of a defendant not to be charged with murder for an act which was not within the scope of murder when committed? The Majority absolutely ignores the grave constitutional question involved here, a question which the defendant raises and presses strenuously in his appeal. Article I, section 9 of the Pennsylvania Constitution provides that in all criminal prosecutions the accused shall not be deprived of his life, liberty or property "unless by the judgment of his peers or the law of the land." The law of the land, as written, recognized, interpreted and practiced at the time Roy Ladd was charged with injuring Dorothy Pierce, excluded indictment for murder for a death occurring more than a year and a day after the injury allegedly causing her death. To now charge him with murder for a death which occurred beyond the period of limitation which is part of the law of the land is to prosecute him on an ex post facto basis. It is to designate as murder an act which was not murder when the alleged victim of the defendant's alleged aggression died.

Wholly ignoring this highly vital constitutional question, the Majority disposes of the whole issue with

a Latin phrase: *cessante ratione legis cessat lex,* which it interprets: "A rule becomes dry when its supporting reason evaporates." But I have seen no evaporation of its supporting reason, nor has the Majority pointed to any evaporation of the supporting reason. The reason which gave birth to the rule is as valid as ever, and the rule is as much a part of the criminal law of the Commonwealth as the assurance of counsel and the need for specification of charges.

The Majority does not speak of the facts in this case. Dorothy Pierce, the alleged victim, died of pneumonia. It is possible, of course, that her weakened condition, due to the alleged hurt received thirteen months before, made her more susceptible to the attack of pneumonia. On the other hand, there is the likely possibility that the pneumonia had no possible connection with the injury allegedly inflicted by the defendant.

Suppose that the pneumonia occurred two years after the physical injury, would it still be proper to charge the defendant with murder? If a murder charge can be brought two years after a blow has been struck, will there ever be a time when the Court may declare that the bridge between the blow and death has now been irreparably broken? May the Commonwealth indict a man for murder when the death occurs ten years after the blow has fallen? Twenty years? Thirty years? One may search the Majority Opinion through every paragraph, sentence, clause, phrase and comma, and find no answer to this very serious question. The Majority is content to open a Pandora's box of interrogation and let it remain unclosed, to the torment and possible persecution of every person who may have at one time or another injured another. I don't doubt that an "expert" of some kind can be found to testify that a slap in the face was the cause of a death fifteen years later.

If there is one thing which the criminal law must be, if it is to be recognized as just, it must be specific and definitive. To compel a person to go through life with a potential murder charge hanging over his head when he is ready and available to be tried on any immediate charge comes close to violating the constitutional prohibition against cruel and unusual punishment. One of the most important constitutional guarantees to an accused is a speedy trial. Would a delay of ten years be a speedy trial?

I do not see the consistency of the Majority's argument when it says: "Society is free to prosecute murderers without a statutory limitation, and it is possible that evidence and witnesses may be lost during a long interval between crime and trial. It is therefore not a strange idea to put no restriction of time upon the death of the victim and to require only proof of causation of conventional quality at the trial." If it is possible that evidence and witnesses may be lost during a long interval between crime and trial, why then should this Court remove all restrictions on such proof so as to extend indefinitely the time between the alleged blow and the death allegedly resulting from that blow?

The Majority has not given one single consistent rule for abolishing a rule which has proved itself, in the crucible of time, to be fair, just, and necessary in the protection of the rights of the accused. The Majority has advanced no historical, legal, or logical reason for destroying a rule which practically the whole of the United States has accepted as reasonable, fair, and just. The Majority has presented no convincing argument as to why Pennsylvania should make so radical a change in the orderly processes of our criminal law.

And then, aside from the utter lack of justification for changing the rule, it is clear to me that this Court

absolutely has no authority to change the rule. If the rule is to be changed, it must be done by the people through their chosen representatives in the General Assembly. The fact that those representatives have not touched the rule in 177 years is rather convincing evidence that they believe the rule to be a good and wholesome one. But by its decision of today, this Court is moving on to Capitol Hill to usurp functions which do not belong to it at all. By this decision of today, this Court is legislating under the guise of judicial interpretation; it is engaging in writing statutes which, under our form of government, is entirely outside the province of the judiciary.

What the Majority is doing in this case is nothing short of despotic untrammeled usurpation of power. It is changing the criminal law, it is taking away constitutional prerogatives, it is making a mockery of the law of cause and effect. It is defying the adjudicated cases, it is spurning the text books of the nation, it is ignoring authoritative treatises and almost the entire library of literature on the subject.

How all this can be done in this age of a supposedly more sensitive appreciation of the rights of the accused is a riddle, wrapped in a mystery, enveloped in an enigma, and concealed in a labyrinth of inexplicability. If this Court is going to arbitrarily rewrite criminal law in defiance of the classic separation of governmental powers, the Legislative Department should be made aware of this encroachment on its constitutional prerogatives and exclusive jurisdiction.

I most vigorously protest what the Majority is doing and emphatically dissent from its Opinion.